Catherine A. GRANT, Douglas D. Grant, Appellants,

v.

Peggy A. STOYER, Appellee.

No. S–9016.

Supreme Court of Alaska.

Oct. 13, 2000.

John W. Hendrickson, Anchorage, for Appellants.

Peggy A. Roston, Law Office of Peggy A. Roston, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

Catherine Grant sued Peggy Stoyer for causing an automobile accident that injured Grant. Stoyer admitted negligence and Grant's case went to trial only on causation and damages. Although the uncontroverted trial evidence established that the accident had caused Grant painful injuries requiring medical treatment, the jury awarded her no damages. The superior court denied Grant's motion for a new trial. Because the evidence that Stoyer's negligence caused Grant to suffer painful injuries requiring medical treatment was uncontroverted, we reverse and remand for a new trial on Grant's claim of damages.

## II. *FACTS AND PROCEEDINGS*

On December 19, 1994, Catherine Grant was entering the intersection of University Avenue and Geraghty Avenue in Fairbanks when Peggy Stoyer drove her Jeep Eagle station wagon into the right front side of Grant's ten-month old Plymouth Acclaim; the collision severely damaged Grant's car. The responding paramedics recorded that Grant complained of a sore chest and pain in her shoulder, lower back, and left knee. They applied a backboard and cervical collar and transported her to the emergency room by ambulance. The emergency room admitting nurse noted that Grant complained of pain in her shoulder, knee, chest, and back. The emergency room physician diagnosed an acute cervical strain, a mild chest wall contusion, and a left knee contusion. Grant was given a soft neck brace and released from the emergency room.

Grant sought additional medical treatment soon after the accident, visiting the Tanana Valley Clinic on December 28, 1994. Her physician recorded Grant's complaints of pain in her neck and right shoulder, and noted that her chest had been bruised. Grant sought physical therapy on January 3, 1995, still complaining of pain in her left knee, neck, and right shoulder because of the accident. Grant returned to the medical clinic on January 25; the notes for that visit record her complaint of "[n]eck, right shoulder, lower back and left knee pain, status post MVA." Grant continued to receive medical attention from her orthopedic specialist, who prescribed anti-inflammatories and pain medication; she received physical therapy through the summer of 1996. She had shoulder surgery in 1996 and again in 1998.

Grant and her husband, Douglas Grant, sued Stoyer, alleging that Stoyer's negligence caused personal injuries to Catherine Grant. They claimed damages for medical expenses, loss of wages, loss of consortium, loss of services, pharmacy and therapy expenses, mileage expenses, and loss of enjoyment.

The parties agreed not to try any claim for past medical expenses because Grant's insurance company had a subrogated right to recover those expenses. Stoyer admitted her own negligence, and the trial focused exclusively on causation and damages.

At trial, the parties disputed the scope and extent of the injury Grant claimed to have suffered because of the accident. Grant testified about the pain, suffering, and inconvenience she had experienced. Members of Grant's family testified about limitations on

her home activities, and how the family had to take over many of her household duties. Grant's husband testified about her ongoing pain and the damage to the marital relationship. During cross-examination, Stoyer's counsel did not contest testimony by Grant or her family about Grant's pain and suffering.

Perhaps because she had shoulder surgery in 1996 and 1998, the testimony of Grant's treating physicians at trial focused on the injury to her shoulder; they testified that she had developed secondary shoulder impingement syndrome in her shoulder as a result of the accident. They also testified about her other recurring complaints of pain. Stoyer's expert witnesses disputed the extent of Grant's injuries. They primarily opined that Grant could not have suffered the kind of shoulder injury she claimed to have suffered as a result of the accident. But even Stoyer's experts conceded at trial that the accident may have caused at least some of Grant's injuries.

The jury returned a special verdict finding that Stoyer's negligence was not "a legal cause of the damages" to Grant or her husband. The special verdict form also contained blanks for the amounts of damages the accident legally caused Grant for past wage loss, "past non-economic loss" (including pain and suffering), and "future non-economic loss" (including pain and suffering). The jury, having found no legal causation, was not permitted to determine the amount of damages. The superior court entered judgment for Stoyer and denied the Grants' motion to vacate the verdict and declined to order a new trial. The Grants appeal.

III. *DISCUSSION*

A. *Standard of Review*

■ The decision to grant or deny a new trial is within the trial court's discretion.[1] We will only reverse a decision to deny a new trial "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[2] In conducting our review, we view the evidence in the light most favorable to the nonmoving party.[3]

B. *The Injury*

The jury's special verdict found that Stoyer's negligence was not "a legal cause of the damages." We consequently review the record to determine whether the evidence permitted the jury to find that the collision was not the legal cause of any compensable loss to Grant.

■ The evidence is uncontroverted that this accident injured Grant. An ambulance took her in a backboard and cervical collar to the emergency room, where she repeated her complaints of neck, knee, shoulder, and chest pain. The collision was sufficiently violent to blow out a tire and crush the fender on her car and to cause her airbag to deploy; Stoyer does not dispute trial testimony and Grant's assertion on appeal that her car was totaled. Grant's daughter, riding in the right front seat, could not open her door and had to exit through the driver's side. At trial, Stoyer did not claim that Grant had faked or exaggerated her injuries at the hospital and did not dispute her truthfulness in reporting her symptoms to the paramedics and doctors who examined her. The medical records of the paramedics, emergency room, Tanana Valley Clinic, and Grant's initial treating physician, all memorialized within six weeks of the accident, include consistent reports of pain and injury attributable to the accident.

One of Stoyer's expert witnesses, Dr. John Ballard, testified that he thought that Grant had been injured in the accident:

I think for sure [Grant] had a whiplash injury, which would have been a cervical sprain. Probably had it when she came forward and back, had a contusion where the—where the seatbelt came across her chest. She also hit her knee against the dashboard, which can cause some anterior knee pain, and in worse situations where it—where it doesn't get better, it can dam-

**1.** See *Pugliese v. Perdue,* 988 P.2d 577, 581 (Alaska 1999).

**2.** *Id.*

**3.** *See id.*

age the—the cartilage underneath the knee cap. And she also probably had an exacerbation of her back pain, probably had a muscular ligament that strained to her back.

Stoyer introduced Dr. Ballard's report of his examination of Grant. Dr. Ballard there concluded that some of her shoulder pain was definitely related to the accident: "I do believe that the automobile accident initially caused shoulder pain, which radiated from the neck over the top of the shoulder." Likewise, Stoyer's other expert witness, Professor Allan Tencer, acknowledged that at least some of Grant's pain could be attributed to the accident. Both experts questioned the extent and nature of Grant's injury, but neither disputed that the accident had injured her and that such injuries would take months to resolve.

Assuming, as Stoyer claims, that Grant had a preexisting condition that contributed to her shoulder pain,[4] no reasonable juror could have concluded that the accident did not at least aggravate that preexisting condition. The instructions plainly explained that the jury could consider a previous injury in connection with damage calculations, but that an aggravation of a previous condition still constituted an injury.

In light of Grant's immediate and continuing reports of painful injury (in the ambulance, at the emergency room, and to her doctors and physical therapists) and her ongoing need for treatment, the jury had no evidentiary basis for finding that the accident had caused no compensable injury to Grant. We recognize that there were genuine disputes about the exact duration of Grant's neck, chest, and knee pain. But there was no genuine dispute that the collision had caused her to suffer some pain, or that those injuries might take some months to resolve. And assuming that the collision did not cause injury to Grant's shoulder, the testimony of Stoyer's own experts nonetheless requires a finding that the collision caused Grant to suffer knee, chest, and neck pain. Therefore, evidence that the accident did not cause some injury to Grant was so completely lacking, slight, and unconvincing as to make the verdict plainly unreasonable and unjust.[5]

### C. Pain and Suffering Damages

The question presented here is whether a fact finder may decline to award any damages for pain and suffering when the evidence is uncontradicted that the defendant's negligence caused the plaintiff to suffer painful injuries requiring repeated medical attention. We spoke directly to this issue in *Walker v. Alaska Road Commission.*[6] There, after a bench trial in an automobile accident negligence case, the superior court awarded economic damages for lost earnings and medical expenses, but awarded no damages for pain and suffering.[7] Reviewing the case on appeal, we noted that "[t]he record contains substantial and uncontradicted evidence that appellant did experience pain, suffering and inconvenience."[8] We then observed that "[t]he clear weight of authority holds that a jury award which fails to include a sum for these items of general damages is inadequate or inconsistent when the evidence supporting them is beyond legitimate controversy."[9] We then remanded with instructions that the superior court award damages for Walker's pain, suffering, and inconvenience.[10]

Stoyer downplays *Walker* and relies on our opinions in *Hayes v. Xerox Corp.*[11] and

---

4. Stoyer argues that it is significant that Grant did not inform one of her surgeons that she previously had breast reduction surgery in part to alleviate shoulder or back pain; Stoyer claimed that Grant's past condition was the cause of her pain. Grant admitted that she had the surgery partly because of pain she suffered in the muscles along the side of the neck and towards the shoulders. But Grant maintained that her pre-surgery pain was in a different location than her post-accident pain.

5. *See Pugliese,* 988 P.2d at 581.

6. 388 P.2d 406 (Alaska 1964).

7. *See id.* at 406–07.

8. *Id.* at 407.

9. *Id.*

10. *See id.* at 408.

11. 718 P.2d 929 (Alaska 1986).

*Hutchins v. Schwartz*.[12] But we conclude that those two cases are distinguishable. In *Hayes*, we upheld the denial of a new trial where the first trial had "established that Mr. Hayes suffered a back and neck injury from the [automobile] accident."[13] Hayes sought a variety of damages, and the jury returned a lump sum general verdict for $50,000.[14] Although Stoyer cites *Hayes* as permitting a jury award of zero pain and suffering damages, the jury's general verdict never clearly ruled out noneconomic damages; it merely awarded a lump sum.[15] While we noted that the "jury could believe that [the plaintiff] exaggerated the extent of his injuries and pain and suffering," we never confronted the rule in *Walker*.[16]

Stoyer's reliance on *Hutchins v. Schwartz* is similarly unavailing. There, the plaintiff suffered injuries in an automobile accident, but we declined to reverse the superior court's denial of a new trial because "the jury could have concluded that Hutchins had not suffered any significant loss of enjoyment of life or physical impairment."[17] We also recognized that there was substantial evidence of malingering, exaggeration, or fraud.[18] Nonetheless, the jury's verdict included $500 for pain and suffering, establishing that the jury did not altogether refuse to award any noneconomic damages.

*Hayes* and *Hutchins* are also distinguishable because the juries in those cases found that the defendants had caused the plaintiffs to suffer at least some compensable harm. Here, the jury's special verdict found that the accident was not a legal cause of any of the damages that Grant claimed.

■ Although we think that *Hayes* and *Hutchins* do not conflict with *Walker*, it is desirable to clarify the rule that applies to these cases. Our longstanding rule in *Walker* stands affirmed: where negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial and uncontroverted, some damages ordinarily must be awarded.

Our decision to reaffirm the rule in *Walker* is consistent with our longstanding belief that where injuries are proved, appropriate damages should be awarded. For example, in *Pugliese v. Perdue*,[19] we reversed the superior court's denial of a new trial in an automobile accident case. There, defendant Perdue had conceded negligence before trial, and the case was tried on causation and damages.[20] Although Perdue acknowledged at trial that his negligence had caused at least some compensable physical injury and the evidence on this point was uncontradicted, the jury awarded no damages at all.[21] We ordered a new trial because we concluded that the "evidence supporting a complete denial of damages [was] so slight and unconvincing as to make the jury's verdict unreasonable and unjust."[22] We noted that "while the evidence leaves ample room to doubt the scope and seriousness of Pugliese's injuries, there is virtually no evidence refuting [the doctor's] conclusion that Pugliese recently sustained a traumatic and painful injury to his lower back."[23] Perdue offered no evidence to rebut Pugliese's medical evidence that he had been injured in the accident.[24] We refused to permit an award for zero damages in the face of overwhelming evidence of *some* injury.[25]

In contrast, in *Richey v. Oen*[26] we affirmed the superior court's decision to deny a new

**12.** 724 P.2d 1194 (Alaska 1986).

**13.** *Hayes,* 718 P.2d at 933.

**14.** *See id.* at 931.

**15.** *See id.*

**16.** *Id.* at 934.

**17.** *Hutchins,* 724 P.2d at 1203.

**18.** *See id.* at 1201–03.

**19.** 988 P.2d 577 (Alaska 1999).

**20.** *See id.* at 577.

**21.** *See id.* at 579–80.

**22.** *Id.* at 583.

**23.** *Id.*

**24.** *See id.* at 579, 581–82.

**25.** *See id.* at 583.

**26.** 824 P.2d 1371 (Alaska 1992).

trial on damages. We reasoned that there was a legitimate fact dispute about whether the automobile accident victim had suffered *any* injury or damages.[27] Only because the jury could have found no injury at all did we permit the award of zero damages to stand.[28] That is not the case here; indeed, Stoyer's own experts agreed that Stoyer had injured Grant. Moreover, Stoyer's trial brief conceded that the accident caused substantial physical injuries to Grant.

■ Our decisions in *Pugliese* and *Richey* support the principle underlying *Walker:* a fact finder may not award zero damages where it is "beyond legitimate controversy" that negligence caused some compensable injury.[29] We affirm that principle in the case at hand. Because it is beyond dispute that Stoyer negligently caused substantial physical injury to Grant, and because uncontradicted evidence shows that Grant experienced at least some pain and suffering, an award of some damages is required.

■ Pennsylvania reached the same conclusion when facing remarkably similar facts. In *Neison v. Hines,*[30] an automobile accident case went to trial on pain and suffering damages alone.[31] The jury awarded zero damages, despite an admission of negligence and the evidence of a painful neck and shoulder injury.[32] There, as here, the defense's medical expert acknowledged that the plaintiff had been injured in the accident.[33] The Pennsylvania Supreme Court upheld the trial court's grant of a new trial, noting that "a jury cannot freely ignore evidence of obvious injury."[34] Although the Pennsylvania court only held that the trial court did not abuse its discretion by ordering a new trial, whereas here we reverse the trial court's denial of a new trial, we find the Pennsylvania court's discussion of the underlying issue persuasive.

■ The trial evidence establishes without doubt that Stoyer's negligence caused a serious and violent accident that injured Grant. Although it was within the jury's discretion to determine the nature and extent of Grant's pain and suffering, it could not find that Stoyer's negligence caused no pain and suffering at all. Only a new trial can remedy this error.

### D. *The Other Damage Claims*

The special verdict form asked the jury to determine whether Stoyer's negligence was "a legal cause of the damages" to Grant and her husband. The jury answered: "No." Because we hold that the jury had to find that the accident caused Grant to suffer pain and suffering, we must remand for a new trial on all the damages properly requested by the Grants. With one possible exception discussed in the next paragraph, there must be a new trial as to each of her damages claims because we must assume that the jury, which could not rationally have declined to award Grant any damages for pain and suffering, did not rationally consider her other damages claims, either. Therefore, we need not review the evidence to determine whether it would support a finding that Stoyer's negligence was not a legal cause of any other damages claimed by Grant.

■ The one possible exception is Grant's mileage claim. Grant argues that she was entitled to recover the expense of driving from her Salcha home to Fairbanks for treat-

---

27. *See id.* at 1375–76.

28. *See id.* at 1376; *see also Bullard v. B.P. Alaska, Inc.,* 650 P.2d 402, 405 n. 4 (Alaska 1982) (noting "no compelling evidence that Bullard had suffered any injury").

29. *Walker,* 388 P.2d at 407.

30. 539 Pa. 516, 653 A.2d 634 (1995).

31. *See id.* at 636.

32. *See id.*

33. *See id.* at 639.

34. *Id.* The Illinois Supreme Court has announced a contrary rule, holding in *Snover v. McGraw,* 172 Ill.2d 438, 217 Ill.Dec. 734, 667 N.E.2d 1310 (1996), that "a jury may award pain-related medical expenses and may also determine that the evidence of pain and suffering was insufficient to support a monetary award." *Id.* 217 Ill.Dec. 734, 667 N.E.2d at 1315. But we agree with Justice Harrison's dissent in that case: "Any pain severe enough to justify medical care is severe enough to warrant compensation." *Id.* 217 Ill.Dec. 734, 667 N.E.2d at 1316 (Harrison, J., dissenting).

ment. She asserts that the failure to award any mileage damages indicates that the jury was swayed by passion and prejudice. There was apparently little dispute that she had incurred some driving expense. But this was an item of economic loss, and Jury Instruction No. 19 described her claim for economic damages only in terms of her wage loss claim. Grant apparently did not request an instruction describing any claim for mileage expenses. She does not argue that Instruction No. 19 erroneously described her economic damages claim exclusively in terms of wage loss. On remand, the court must determine whether she preserved a mileage claim at the first trial. If she did not, she may not seek a mileage award at the second trial. And, given the instructions, the jury's failure to award mileage does not indicate passion or prejudice against Grant.

## IV. CONCLUSION

We REVERSE the judgment and REMAND for a new trial on Grant's claim of damages.