David and Mary GLAMANN, individually and as next friend of Jesse Glamann, Appellants,

v.

Gloria KIRK (f/k/a Gloria Caler), Appellee.

No. S–9362.

Supreme Court of Alaska.

Aug. 17, 2001.

Brett Von Gemmingen, Anchorage, for Appellants.

Paul W. Waggoner, Law Offices of Paul W. Waggoner, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

David Glamann was injured when Gloria (Caler) Kirk's automobile rear-ended his automobile. Kirk admitted negligence but disputed the extent of her liability. Glamann did not respond to Kirk's $50,000 offer of judgment, and the case went to trial. A jury awarded Glamann $10,000.

Glamann appeals the trial court's decisions to: (1) admit evidence of malingering, (2) give an aggravating-cause jury instruction, (3) deny the motion for a new trial, (4) disallow Mary Glamann's wage loss claim, and (5) award Kirk attorney's fees. Because we conclude that the trial court did not err with respect to the first four issues and that any

error with respect to the award of attorney's fees was harmless, we affirm the verdict and judgment.

### II. FACTS AND PROCEEDINGS

On October 10, 1996, Glamann and Kirk were involved in an automobile collision in Kodiak. Kirk rear-ended Glamann's stopped truck. Glamann's truck then collided with another vehicle. Glamann was injured when his head struck the rear window of his truck's cab, but he did not lose consciousness. He was stabilized by medics and taken to Kodiak Island Hospital for x-rays. Dr. Kevin Creelman examined Glamann in the emergency room and diagnosed a scalp contusion and probable neck strain.

Glamann had a follow-up appointment with Dr. Creelman on October 15. Dr. Creelman prescribed physical therapy for Glamann. Glamann attended several sessions in October 1996. The therapist's notes from the final October session indicate that treatment would be discontinued, unless the symptoms returned, based on Glamann's report of having been headache-free since his last treatment.

Between the time of the collision and the end of December, Glamann was able to work a full schedule in his job as parts manager for PenAir. His next appointment with Dr. Creelman took place on December 20, based on a reoccurrence of headache pain following a long session splitting wood. Glamann then returned to physical therapy at the end of December. Glamann complained of headaches following certain activities, including those he enjoyed, such as shooting and woodsplitting. At that time, some three to four months after the collision, Dr. Creelman began prescribing various medications, including narcotic drugs.

In March 1997 Dr. Creelman referred Glamann to Dr. Leon Chandler, an anesthesiologist and pain management specialist, for an evaluation and report. Dr. Chandler determined that Glamann had incurred a flexion extension injury, or whiplash, in the collision, with cervical spine injuries that resulted in occipital[1] headaches and occipital neuralgia.[2]

---

1. Dr. Chandler testified that "occipital" refers to the base of the skull.

2. Dr. Chandler testified that "occipital neuralgia" is an irritation of the nerves coming from the joint in the neck, which can cause headaches.

Dr. Chandler presented several options to Glamann for dealing with cervical pain. These included cryotherapy (freezing of the nerves at the base of the skull), occipital nerve blocks (injection of steroids and local anesthetics in the pain causing nerves), radio frequency lesions of the cervical nerves (cutting the nerve with a radio frequency lesion), and cervical epidural stimulator as a last resort. Over time, Glamann tried all but the epidural stimulator.

In October 1997 Glamann was referred by Dr. Creelman to the Virginia Mason Clinic in Seattle, Washington. Glamann was examined by a neurologist, Dr. Lynn Taylor. Glamann was also examined, at the suggestion of Dr. Taylor, in January 1998 by Dr. Leon Fordyce, a neuropsychologist at Virginia Mason.

The Glamanns filed suit against Kirk in December 1997, claiming that Kirk's negligent failure to stop her car caused the accident that injured Glamann and, consequently, his family. Kirk admitted fault for the collision, but she disputed the extent of her liability for Glamann's injuries. Her defense was based in part on Glamann's prior injuries and conditions: Glamann had suffered a fractured jaw in a car accident when he was sixteen, almost thirty years before the collision; x-rays showed the existence of a fractured vertebra of uncertain origin; and Glamann's doctors testified that Glamann exhibited signs of a conversion disorder [3] and that his symptoms could not all be attributed to a physical cause. During discovery, Kirk hired a psychologist, Dr. Ronald Ohlson, to evaluate Glamann.

Glamann filed two motions in limine: the first to exclude evidence of malingering or secondary gain,[4] the second to exclude evidence of other accidents and injuries. Supe-

rior Court Judge Donald D. Hopwood denied both motions.

Kirk made Glamann an offer of judgment for $50,000, plus costs, interest and attorney's fees, on June 12, 1998. Glamann did not respond to the offer of judgment.

In addition to her loss of consortium claims, Glamann's wife submitted a wage loss claim for approximately $1,800 for the time she missed work due to the need for her to drive Glamann to his medical appointments. The court did not allow Mary Glamann's lost wages claim to go to the jury.

During trial, Kirk proposed that a jury instruction be given on aggravating cause. Over Glamann's objection, the trial court gave the instruction.

The parties dispute the economic loss incurred by Glamann. Glamann claims that at the time of trial his past medical expenses totaled over $33,000, his past economic loss exceeded $31,000, and his out-of-pocket expenses totaled more than $12,000. Kirk, on the other hand, calculates the total medical cost for the three months following the collision to be $2,013.30. Kirk also points out that Glamann worked a full schedule during that time.

The jury initially awarded Glamann, in a special verdict, $8,000 for past economic damages only. Because the court found the lack of award for past non-economic damages inconsistent with the award for past economic damages, the jury was instructed to reconsider its award. The jury ultimately awarded Glamann $8,000 in past economic damages, $2,000 in past non-economic damages, and nothing for future damages.

The trial court denied Glamann's motion for a new trial and awarded Kirk, as prevail-

---

**3.** Dr. Fordyce testified that a "conversion disorder" occurs where a person converts psychological forces, such as anxiety or depression, into physical symptoms.

**4.** To malinger is "to pretend to be ill or otherwise physically or mentally incapacitated so as to avoid duty or work" or "to deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work." Webster's Third New International Dictionary of the

English Language Unabridged 1367 (1993). Secondary gain is defined as "pleasure derived from a neurosis primarily necessary to the individual for other reasons." *Id.* at 2051. Dr. Ohlson compared the two and testified that "malingering is when [one] consciously tell[s] a lie in order to get something," and that "[s]econdary gain is really a reward for being sick in this context."

ing party, fifty percent of her actual attorney's fees under Alaska Civil Rule 82(b)(3).[5]

Glamann appeals: (1) the denial of his motion to exclude evidence of malingering; (2) the use of the aggravating-cause jury instruction; (3) the denial of his motion for a new trial; (4) the trial court's disallowance of Mary Glamann's lost wages claim; and (5) the award of attorney's fees to Kirk.

## III. STANDARDS OF REVIEW

■ We review a trial court's decision as to admissibility of evidence for an abuse of discretion.[6]

■ We review jury instructions to which a timely objection was made de novo.[7] A special verdict form is a type of jury instruction subject to the same standard of review for jury instructions.[8]

■■ Trial courts are accorded discretion in the decision to grant or deny a new trial.[9] We will "affirm a trial court's decision to deny a new trial if there is an evidentiary basis for the jury's decision," viewing the evidence in the light most favorable to the non-moving party.[10]

■ Whether the trial court erred in disallowing a lost wages claim is a question of law subject to de novo review.[11]

■ Generally, the determination as to which party is the prevailing party is subject to review for an abuse of discretion,[12] as is a trial court's award of enhanced attorney's fees.[13] But whether the trial court, in determining the award of attorney's fees, applied the law correctly is a question of law that we review de novo, applying "the rule of law that

is most persuasive in light of precedent, reason, and policy." [14]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Malingering.

Glamann argues that the trial court abused its discretion when it denied his motion to exclude reference to whether he malingered or sought secondary gain. In the court below, Glamann relied on Evidence Rules 402 and 403 to support his motion to exclude reference to malingering and secondary gain, arguing that references to or insinuations of malingering or secondary gain would be confusing or misleading to a jury and thus prejudicial. On appeal, Glamann implies that he was prejudiced contending that the use of the term "malingering" has "a powerful impact on the jury." Glamann claims that at the time he filed his motion, there was no witness who would testify, to a medical certainty, that he was a malingerer.

Kirk opposed the motion based on the existence of expert testimony that Glamann's pain was psychological and not based upon a physical source, as well as on non-medical testimony supporting her claim that Glamann was engaged in secondary gain. Kirk argues that juries routinely deal with questions of whether a plaintiff is trying to take advantage of the system and that she was entitled to present such evidence and to argue reasonable inferences based on the evidence presented.

**5.** The order cites Civil Rule 82(a)(3), but we conclude that this was a typographic error and that the judge meant Rule 82(b)(3).

**6.** See Wal–Mart, Inc. v. Stewart, 990 P.2d 626, 632 (Alaska 1999).

**7.** See Griffith v. Taylor, 12 P.3d 1163, 1166 (Alaska 2000).

**8.** See Stinson v. Holder, 996 P.2d 1238, 1244 (Alaska 2000).

**9.** See Grant v. Stoyer, 10 P.3d 594, 596 (Alaska 2000).

**10.** Pugliese v. Perdue, 988 P.2d 577, 581 (Alaska 1999).

**11.** See Langdon v. Champion, 752 P.2d 999, 1001 (Alaska 1988).

**12.** See Andrus v. Lena, 975 P.2d 54, 58 (Alaska 1999) (citing Barber v. Barber, 915 P.2d 1204, 1209 n. 10 (Alaska 1996)).

**13.** See Cole v. Bartels, 4 P.3d 956, 958 (Alaska 2000).

**14.** Philbin v. Matanuska–Susitna Borough, 991 P.2d 1263, 1266 (Alaska 1999).

Relevant evidence may be excluded if the trial court "finds its probative value is outweighed by the risk that it will have a prejudicial effect on the jury, confuse the issues, or mislead the jury." [15] Credibility determinations are the quintessential province of the jury.[16] Only if the evidence was unfairly prejudicial should it be excluded.

The contention that Glamann is a malingerer, or is engaged in secondary gain, or that he exaggerated the extent of his injuries, is relevant—not only to Glamann's credibility, but also to the more fundamental question of how much harm Kirk's negligence actually caused.

Glamann's contention that the admission of evidence of malingering and secondary gain was either confusing, misleading, or unfairly prejudicial is baseless. He had the opportunity to show the validity of his injuries with the testimony of numerous experts. The substance of the testimony was that he was not malingering; the experts concurred on this. But quantity of testimony does not entitle Glamann to a judicial determination that his evidence should be believed.[17] There was also evidence that many of Glamann's symptoms were not entirely legitimate. For example, he was physically able to do his job following the collision, including lifting ninety-three pound batteries and forty-pound tires. Dr. Ohlson, Dr. Taylor, and Dr. Fordyce all agreed that Glamann's symptoms were more psychological than physical, and that his use of narcotics was inappropriate.

Further, Dr. Taylor reported that Glamann's neurological exam was normal but that he had inadvertently become "trapped in the chronic pain syndrome." [18] She opined that an increase in pain after engaging in activities that the sufferer enjoys, such as Glamann's headaches suffered following shooting, was consistent with a conversion disorder. She also testified that she could not determine in which accident Glamann fractured his vertebra.

Dr. Fordyce conducted an exam designed in part to determine whether a person is malingering or has a conversion disorder. He testified that Glamann had tendencies toward a conversion disorder. Dr. Fordyce also thought that experiencing pain after enjoyable activities could be consistent with a conversion disorder, but was unsure. Dr. Fordyce acknowledged that he and Dr. Taylor were concerned that Glamann's pain had gone on too long given his physical injuries.[19]

When asked about whether psychological stress can be converted to pain, Kirk's expert, Dr. Ohlson, answered in the affirmative. Dr. Ohlson went on to conclude that Glamann suffered under a number of stressors, but he was not of the opinion that Glamann was a malingerer. And there was also evidence of other stressors in Glamann's life. Dr. Ohlson testified that Glamann had "long standing anxiety problems." Glamann's supervisor at PenAir testified that Glamann had conflicts with his co-workers. Glamann quit his job in September 1997 based in part on problems with co-workers; he wrote a letter to a co-worker claiming that the co-worker's "criticism has a destructive result upon my well-being."

The evidence of malingering, secondary gain, or exaggeration was not unfairly prejudicial. The evidence was directly relevant to the jury's determinations as to credibility and causation, and was neither confusing nor misleading. There was no abuse of discretion in allowing the jury to consider evidence of malingering or secondary gain.

15. *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1150 n. 20 (Alaska 1999).

16. *See, e.g., Hayes v. Xerox Corp.* 718 P.2d 929, 934 (Alaska 1986).

17. Jury Instructions 4 and 5 explain that the jurors are the sole judges of credibility and weight to be given to the evidence, as well as informing them that they are to decide which witnesses to believe, including experts.

18. Dr. Fordyce testified that "chronic pain syndrome" is the experience of debilitating pain over time that is not explained by underlying medical facts.

19. Both doctors recommended that Glamann attend the Virginia Mason pain management clinic, a program that costs approximately $25,000 to $30,000.

**B.** *The Trial Court Did Not Err When It Instructed the Jury on Aggravating Cause.*

Glamann contends that the court's instruction on aggravating cause [20] was erroneous because it violates "the princip[le] that a tortfeasor takes its victims as it finds them" and because "a tortfeasor is liable for all proximately caused injuries." He argues that because the medical testimony was "unanimous" that the collision "triggered" his injuries, the trial court should not have given the jury the aggravating-cause instruction. Glamann also contends that the aggravating-cause instruction improperly shifted the burden of proof to Glamann.

**1.** *The aggravating-cause jury instruction properly states the law.*

 Contrary to Glamann's contention, the aggravating-cause instruction correctly states and clarifies the law for the jurors: The defendant must take the victim as the defendant finds the victim and is liable for those injuries caused or aggravated by defendant's negligence.[21] Where the plaintiff claims that the defendant is responsible for the full extent of the claimed injuries, the plaintiff does not deny the existence of a prior injury or condition, there is evidence of a causal connection between the prior injury or condition and the current injury or condition, and the trial court admits such evidence at trial, the aggravating-cause instruction is an appropriate clarification of the jurors' duty in determining the extent of liability.[22] We have approved the use of an aggravating-cause instruction almost identical to the one at issue here in a case involving liability for injuries incurred in a car accident.[23]

**2.** *Unanimity of medical testimony did not make the giving of the aggravating-cause instruction error.*

Glamann's contention that giving the jury instruction was an abuse of discretion because the medical testimony was "unanimous" as to the accident being the cause of his injuries is without merit because there was some evidence linking a prior injury with injuries incurred in the October 1996 accident. A jury's determination of cause is not based on a tally of witnesses' testimony. In this case, there was sufficient evidence to establish the existence of a disputed issue of material fact for the jury's consideration. As Jury Instruction 8 states, the jury is to decide an issue by "the convincing force of the evidence," not by the relative number of witnesses.

 Based on all the evidence, reasonable minds could differ as to the cause of all of Glamann's claimed injuries. At oral argument, Glamann conceded to this court the existence of a pre-existing mental condition. In addition, there was evidence as to a vertebra fracture, numerous stressors in Glamann's life, and the likelihood that he suffered from a conversion disorder as well as from a degenerative disc disease. Furthermore, when Dr. Taylor was asked "... if [Glamann's] facet joint had very much significance you really couldn't tell which accident it was fractured in, could you?", she an-

---

**20.** Jury Instruction 18 provided:

 A person who has a condition or disability at the time of an injury cannot recover damages for that condition or disability. However, he or she is entitled to recover damages for an aggravation of such preexisting condition or disability if the aggravation is the legal result of the injury.

 This is true even if the person's condition or disability made him or her more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury. In other words, the law provides that a defendant takes the plaintiff as he or she finds him.

 Where a preexisting condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional damages caused by the aggravation.

**21.** *Compare LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 632 P.2d 539, 543–44 (Alaska 1981), *with* Jury Instruction 18, *supra* n. 20.

**22.** *See, e.g., Snyder v. State,* 930 P.2d 1274, 1280 (Alaska 1996) (concluding that whether "a requested jury instruction should be given lies in the discretion of the trial court. However, the general rule is that the defendant is entitled to a jury instruction on a defense theory if there is 'some evidence' to support it." (internal citation omitted)).

**23.** *See LaMoureaux,* 632 P.2d at 543–44; *see also* Alaska Pattern Civil Jury Instruction 20.11.

swered "no." Under all of these circumstances, the questions of causation and aggravating cause were properly submitted to the jury.

> 3. *The aggravating-cause instruction did not improperly allocate the burden of proof.*

■ The issue of Glamann's prior accidents, injuries, and conditions is not an affirmative defense for which Kirk bears the burden of proof, as Glamann contends; it is simply a defense to allegations of liability. "An affirmative defense can generally be defined as new matter not set forth in the complaint which constitutes a defense; or new matter which, assuming the complaint to be true, is a defense to it." [24] Glamann asserted that Kirk's negligence caused his injuries. Kirk disputed the extent of her liability for Glamann's injuries—a matter asserted in the complaint. Kirk's dispute did not constitute an affirmative defense. It thus remained Glamann's burden to prove that Kirk caused his claimed injuries. The aggravating-cause instruction did not improperly shift the burden.

We conclude that the trial court did not err in instructing the jury as to aggravating cause.

> C. *The Trial Court Properly Denied Glamann's Motion for a New Trial.*

> 1. *The evidence is sufficient to support the jury's verdict.*

A decision to deny a new trial will be reversed only "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust." [25]

Glamann first argues that a new trial should have been allowed because the jury award of $8,000 for past economic damages, $2,000 for past non-economic damages, and

nothing for future damages, was internally inconsistent.

■ While Kirk concedes that the initial jury verdict was inconsistent, she argues that the inconsistency was corrected by resubmitting the question of past economic and non-economic loss to the jury. We agree.

We discussed internal inconsistency of a jury award in *McCubbins v. State, Department of Natural Resources, Division of Parks and Recreation,*[26] a case in which a swimmer sued a landowner for neck injuries incurred when he dove into water and struck his head on a submerged rock. The jury awarded future medical expenses, but failed to award anything for loss of future earning capacity.[27] We held that the award was inconsistent and that reversal of the verdict and a new trial on the issue of damages were therefore required.[28] This case is distinguishable.

It is not disputed that the first jury verdict was internally inconsistent because the jury awarded past economic damages but no past non-economic damages. But any inconsistency was cured when Judge Hopwood instructed the jury to reconsider its verdict and award past non-economic damages if its conclusion was that Glamann suffered past economic loss. The final jury verdict awarded both past economic and non-economic damages and made no award for either future economic or non-economic loss. The jury apparently concluded that Kirk was not responsible for the full extent of Glamann's injuries. This decision could have been based on its determination as to duration, or extent, of his injuries. Regardless of its basis, the award is internally consistent and is therefore not a basis for a new trial.

Glamann next argues that the verdict is facially inadequate because he asked for economic damages ranging from $88,000 to $396,386 plus non-economic damages, but was only awarded $10,000. He contends that

**24.** *Bowman v. Blair,* 889 P.2d 1069, 1071 n. 2 (Alaska 1995) (quoting *Rollins v. Leibold,* 512 P.2d 937, 940 (Alaska 1973)).

**25.** *Grant,* 10 P.3d at 596.

**26.** 984 P.2d 501, 502–3 (Alaska 1999).

**27.** *See id.* at 503.

**28.** *See id.* at 509.

*Pugliese v. Perdue*[29] supports his contention that an inadequate verdict is enough to support reversal of the trial court's denial of his motion for a new trial in this case. He argues that the references to malingering and other factors affecting his injuries "apparently had an effect" on the jury because the award "did not even begin to compensate David for his past wage loss" and "compensated [him] only through March of 1997."

■ Inadequacy of a jury verdict is grounds for a new trial in cases where negligence is conceded or proved, but no damages are awarded. For example, in *Grant v. Stoyer*, the defendant admitted negligence in a personal injury case stemming from an automobile accident, but the parties disputed the scope and extent of plaintiff's injury.[30] We reversed a jury verdict of no causation and no award of damages because the evidence was uncontroverted that the accident injured the plaintiff.[31] We held that "where negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial and uncontroverted, some damages ordinarily must be awarded."[32] And in *Pugliese*, we observed that "[t]he undisputed facts establish[ed] that Perdue negligently drove his pickup truck into Pugliese, a collision involving direct bodily impact" and injury to Pugliese.[33] Because the jury failed to award Pugliese any recovery, we concluded that the verdict was "unreasonable and unjust," and remanded for a new trial.[34]

But where the jury makes some award in cases where negligence is conceded or proved, we have not reversed that award as inadequate. For example, in another automobile accident case, *Hayes v. Xerox Corporation*, a jury returned a lump sum general verdict.[35] We allowed that verdict to stand, even though there was no specific award for pain and suffering, observing that the lump sum indicated that the jury had not ruled out non-economic damages.[36] We noted that "[t]he jury could believe that [the plaintiff] exaggerated the extent of his injuries and pain and suffering."[37] And in *Hutchins v. Schwartz*, another automobile accident case, we affirmed the superior court's denial of a motion for a new trial in part because reasonable minds could have differed as to the causal connection between Hutchins's back injury incurred in the accident and subsequent diagnosis of a hiatal hernia.[38] We stated that "jurors make credibility choices and determine the weight to be given the evidence" and that they could have concluded that Hutchins had not suffered any substantial losses, given the significant evidence of malingering, exaggeration, and fraud presented at trial.[39]

■ Glamann's reliance on *Pugliese* for his contention that the verdict is inadequate and not supported by the evidence is misplaced. In this case, the jury did not fail to return a verdict in his favor. The jury made a considered choice as to what it believed Kirk owed for losses to Glamann: $8,000 for past economic damages and $2,000 for past non-economic damages. We cannot say that this is an unreasonable award. And, as in *Hutchins*, there is an evidentiary basis for the jury's determination: Glamann had been injured in a prior accident; he worked a full schedule in the eleven weeks immediately following the accident; his recurring headaches began after he engaged in other activities; he had numerous stressors in his life, both before and after the accident; and medical experts testified to his possible conversion disorder and inappropriate use of narcotics.

**29.** 988 P.2d 577 (Alaska 1999).

**30.** 10 P.3d at 595.

**31.** *See id.* at 596, 600.

**32.** *Id.* at 598.

**33.** 988 P.2d at 581.

**34.** *Id.* at 583.

**35.** 718 P.2d 929, 931 (Alaska 1986).

**36.** *See Grant,* 10 P.3d at 598 (explaining and distinguishing *Hayes* ).

**37.** *Hayes,* 718 P.2d at 934.

**38.** 724 P.2d 1194, 1203 (Alaska 1986).

**39.** *Id.*

Glamann argues that the award only compensates him through March 1997. But this is not a basis to find the jury award inadequate; the jury could have decided that he suffered no injuries from the accident after that date.

Because there is evidentiary support for the verdict we conclude that the superior court did not err in denying the motion for new trial.

2. *The superior court did not abuse its discretion when it refused to further itemize the special verdict form.*

"It is within the sound discretion of the trial court to select those questions the jury is required to answer in a special verdict form. Moreover, it is not error to refuse to submit a question or instruction where the issue is adequately covered by other questions or instructions." [40]

Glamann argues that the trial court erred when it refused to further itemize the special verdict form after the initial jury verdict was determined to be inconsistent. Glamann relies on this court's "approval" of specific itemization in a special verdict form in *McCubbins* as allowing the trial court to more easily discern inconsistencies. But *McCubbins* does not govern our decision on this issue. *McCubbins* was a case about internal consistency of a jury verdict, not the required degree of a special verdict form.[41]

Kirk, in turn, contends that the verdict form used was proper and consistent with AS 09.17.040(a),[42] and that no further itemization was required. We agree.

A special verdict form is subject to the same standard of review as jury instructions and thus errors in a special verdict form "will not be grounds for reversal unless they caused prejudice." [43] There is no evidence that the special verdict form in this case caused prejudice. The verdict form met the requirements of AS 09.17.040(a): It included separate responses for past economic damages, past non-economic damages, future economic damages and future non-economic damages. Because the damages question was adequately itemized, the trial court did not abuse its discretion when it refused to require further itemization.

D. *The Superior Court Did Not Err in Disallowing Mary Glamann's Damages Claim for Lost Wages.*

Glamann argues that the wage loss claim of his wife should have been allowed because it would not have been a double recovery. He claims that he could have claimed the costs for transportation to his appointments and recovered that cost, and that it should make no difference that it was framed in terms of his wife's wage loss. He argues that *Hibpshman v. Prudhoe Bay Supply, Inc.*[44] should apply to allow joinder of the spouse's claim.

Kirk contends that the superior court properly disallowed Mary Glamann's wage loss claim as a matter of law under *Heritage v. Pioneer Brokerage and Sales, Inc.*[45] We agree that *Heritage* controls.

In *Heritage,* we considered whether a husband could recover on a wage loss claim when the lost wages were based on his decision to provide nursing services to his injured wife.[46] We held that if the husband's wage loss was "attributable to his decision to provide nursing services to his wife, he may not be permitted to introduce evidence of the

**40.** *Alaska Bussell Elec. Co. v. Vern Hickel Const. Co.,* 688 P.2d 576, 581 (Alaska 1984) (internal quotation marks and citations omitted).

**41.** *McCubbins,* 984 P.2d at 506–07.

**42.** AS 09.17.040(a) provides:

In every case where damages for personal injury are awarded by the court or jury, the verdict shall be itemized between economic loss and noneconomic loss, if any, as follows:
(1) past economic loss;
(2) past noneconomic loss;
(3) future economic loss;
(4) future noneconomic loss; and
(5) punitive damages.

**43.** *Stinson v. Holder,* 996 P.2d 1238, 1244 (Alaska 2000).

**44.** 734 P.2d 991, 997 (Alaska 1987).

**45.** 604 P.2d 1059 (Alaska 1979).

**46.** *Id.* at 1064–65.

losses at trial."[47] We also concluded that a determination of when support is necessary in a close family relationship is "too speculative to be made part of the general recovery of tort victims."[48]

The *Hibpshman* case is inapposite. The decision there dealt with the requirement of joinder of a child's loss of consortium claim resulting from injuries tortiously inflicted on the child's parents by a third party,[49] not for wage loss due to services rendered by a spouse.

In this case, Mary Glamann's lost wages claim stemmed from her decision to transport her husband to his medical appointments because he was medicated and could not take himself. In light of *Heritage*, we decline to find such circumstances to warrant the allowance of a wage loss claim. There is no legal basis to support Mary Glamman's claim for lost wages.

### E. The Superior Court's Award of Attorney's Fees to Kirk under Civil Rule 82 Was Harmless Error.

The trial court concluded that Kirk was the prevailing party and awarded her fifty percent of her actual attorney's fees. Glamann argues that he was the prevailing party in this case because he received an affirmative recovery, even if less than asked for, and thus the award to Kirk was erroneous. But Kirk contends that because she made an offer of judgment for $50,000, which Glamann did not accept, and because the verdict was only $10,000, she is entitled to attorney's fees as the prevailing party.

"The trial court has wide discretion in awarding attorney's fees to a prevailing party."[50] When a party receives a substantial recovery, he or she is considered to be, with few exceptions, the prevailing party for purposes of attorney's fees under Rule 82.[51] But in cases where an offer of judgment has been made, there is no need for the court to determine the prevailing party because that status is determined by the provisions of Rule 68, as is the award of attorney's fees.[52]

In this case, the trial court did not rely on Civil Rule 68 for its award of attorney's fees, but instead considered Kirk to be the prevailing party for purposes of an award of enhanced attorney's fees under Rule 82(b)(3). Because of Glamann's failure to better the offer of judgment, the court's reliance on Rule 82 was plain error. But because Kirk was entitled to attorney's fees under Rule 68(b), and because the offer-of-judgment rule requires that she be considered the prevailing party,[53] we conclude that this error was harmless.

"We will interfere with the trial court's determination as to attorney's fees only if the award is manifestly unreasonable."[54] Kirk incurred attorney's fees in excess of $44,000 and was awarded half of those fees. It is possible that Kirk made her offer of judgment early enough in these proceedings to be eligible for more than fifty percent of her attorney's fees.[55] But because Kirk has not cross-appealed the award of attorney's fees, the failure to consider the potentially higher award is harmless. And we conclude that the trial court's award of half of her actual attorney's fees is not mani-

**47.** *Id.* at 1065.

**48.** *Id.*

**49.** *Hibpshman*, 734 P.2d at 997.

**50.** *Hutchins*, 724 P.2d at 1204.

**51.** *See, e.g., Blumenshine v. Baptiste*, 869 P.2d 470, 474 (Alaska 1994).

**52.** *See* Alaska R. Civ. P. 68.

**53.** The parties dispute which version of Rule 68 is applicable to this case because Glamann's cause of action accrued prior to August 7, 1997, but he did not file his complaint until after that date. However, we need not resolve that question because under either the former or current version of Rule 68, Glamann's failure to better Kirk's offer of judgment required the trial court to consider Kirk the prevailing party. *Compare* former Rule 68(b)(1) [applicable to cases filed before August 7, 1997, Alaska Supreme Court Order No. 1281 (August 7, 1997)] *with* current Rule 68(c).

**54.** *Hutchins*, 724 P.2d at 1204 (internal quotation marks omitted).

**55.** *See* Alaska R. Civ. P. 68(b)(1) and former Alaska R. Civ. P. 68(b)(1).

festly unreasonable. Accordingly, we affirm the award of attorney's fees.

## V. *CONCLUSION*

Because the superior court did not err in admitting evidence of malingering, giving an aggravating-cause instruction, denying the motion for a new trial, and disallowing Mary Glamann's wage loss claim, and because any error with respect to the award of attorney's fees was harmless, we AFFIRM the judgment in all respects.