Robert B. PUGLIESE, Appellant,

v.

Ralph PERDUE, Appellee.

No. S–8393.

Supreme Court of Alaska.

Sept. 3, 1999.

Michael A. MacDonald, Downes, Mac-Donald & Levengood, P.C., Fairbanks, for Appellant.

Winston S. Burbank, Call, Barrett & Burbank, and Constance Ringstad, Fairbanks, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Ralph Perdue backed his pickup truck into Robert Pugliese, a pedestrian. When Pugliese sued for personal injuries, Perdue admitted negligence but contested the amount of compensable damages. During closing arguments at trial, Perdue's counsel told the jury that Pugliese "is entitled to some compensation here. I am not saying don't give him anything. That just wouldn't be fair and just." But the jury gave Pugliese nothing. Pugliese appeals, contending that the verdict was not just and fair and that the court should therefore have granted a new trial. We reverse and remand, concluding that Alaska Civil Rule 59(a) required a new trial because the evidence fails to support a complete denial of damages.

### II. FACTS AND PROCEEDINGS

As Ralph Perdue backed his pickup truck out of a parking spot at Fred Meyers in Fairbanks on April 4, 1994, his foot slipped off the brake pedal and onto the accelerator, causing the truck to hit Robert Pugliese, who was walking behind the truck.

The parties gave conflicting descriptions of the collision. Pugliese described it as a traumatic event: Perdue's truck suddenly "shot" back at about five to ten miles an hour. Pugliese tried to jump out of the way, but the truck struck his elbow, spun him around in the air, and knocked him down, bruising his arm and hurting his back and leg. Perdue

approached Pugliese, showed him his driver's license and asked if he was hurt; Pugliese responded that he did not know and that he wanted to call the troopers. But Perdue got back into his truck and left.

Perdue characterized the accident as less serious: When his foot slipped off the brake and onto the accelerator pedal, his truck moved backwards at only about one mile per hour. Perdue heard the truck bump something, looked back, and saw Pugliese, standing. When Perdue contacted him to see if he needed medical help, Pugliese replied that he was "okay." After Perdue gave his license number and business card to Pugliese, Pugliese said something about calling the police; Perdue told him to go ahead. As Pugliese walked toward the store, Perdue saw no limp or any other sign of injury. Perdue then left the area, thinking that the police would not investigate an accident that occurred on private property.

Pugliese evidently reported the incident to Perdue's insurer within the next two days. Pugliese reported the incident to Dr. George Vrablik during a May 26, 1994, appointment that they had scheduled for the treatment of a pre-existing shoulder injury. According to Pugliese, when the pain in his back and leg persisted following the collision, he decided to mention it Dr. Vrablik. Pugliese told the doctor that since the collision he had felt continuing pain in his leg and back. After examining Pugliese and ordering a number of different tests, Dr. Vrablik diagnosed him as having a damaged L–5 nerve root.

Pugliese, citing this injury, sued Perdue for damages resulting from the collision, claiming that his injury was permanent, would cause him ongoing pain, and would eventually cut short his career as a petroleum refinery mechanic. Before trial, Perdue admitted negligence, liability, and lack of comparative negligence. This left damages as the sole issue to be tried.

In his opening statement to the jury, Perdue's counsel emphasized that Perdue would contest only the amount of damages attributable to the injury:

We believe in conclusion that the evidence will show that the problems that Mr. Pug-

liese received was a very minor bump ..., that the bulk of his back injuries that he sustained were from a pre-existing condition, ... and that as a result of this particular accident, he has incurred very little in terms of damages.

At trial, Dr. Vrablik testified concerning the cause and extent of Pugliese's injury. Dr. Vrablik confirmed that Pugliese had first complained of his back injury on May 26, 1994, during an appointment scheduled for ongoing treatment of his pre-existing shoulder problem. Upon examining Pugliese, Dr. Vrablik found symptoms indicating "a back injury with radicular pain going down the leg following a specific nerve pattern." In particular, the doctor noted tenderness in the area of the sciatic notch, restricted range of straight leg raising, and weakness of the great toe extensor. A subsequent EMG test corroborated Dr. Vrablik's initial impression, disclosing irritability of the right L–5 nerve root. X-rays and MRI tests revealed no trauma or other evidence pointing to a different source for the problem. Based on these tests, his examination, and his knowledge of Pugliese's history, Dr. Vrablik diagnosed Pugliese as suffering from an L–5 root irritation on the right side. The doctor further concluded that it was more likely than not that the damage was caused by the trauma of Pugliese's accident.

Perdue offered no medical evidence in response to Dr. Vrablik. Through cross-examination, however, Perdue suggested that Pugliese had exaggerated his problems and that his back injury could be explained by pre-existing causes. But Dr. Vrablik testified that Pugliese's back problems were entirely unrelated to his pre-existing shoulder injury. While Dr. Vrablik acknowledged that Pugliese had previously experienced a T–5 compression fracture, that he suffered from spinal conditions known as spondylolithesis and spondylosis, and that his spine also showed signs of a degenerative process known as disc dessication—any of which might predispose him to back pain after an accident—the doctor emphasized that these problems, by themselves, would not account for the back pain, since "[i]n general, people with this condition don't just develop back pain.

There's usually some precipitating event." In Pugliese's case, Dr. Vrablik believed that this precipitating event was the accident. Dr. Vrablik further believed that Pugliese's condition had stabilized and was unlikely to improve.

Pugliese testified about his injury, his course of treatment with Dr. Vrablik, and the problems that his back was causing with his work. In connection with Pugliese's testimony concerning his medical treatment, the parties stipulated that Dr. Vrablik's billings amounted to $1,057. The court accordingly instructed the jury that "the parties stipulate and you may then accept that Dr. Vrablik's bills [are] for $1,057." Pugliese also acknowledged that, to date, his back injury had caused him to lose no more than $540 in wages.

In his final argument to the jury, Perdue's counsel challenged Pugliese's credibility, contending that "parts of [the case] are contrived, embellished and just blown out of perspective." Although he reminded the jury that Perdue did not deny negligence, defense counsel emphasized that "[o]bviously, we think that the injuries to Mr. Pugliese are minimal." And while insisting that he did not "blame Mr. Pugliese for embellishing his situation before you," defense counsel nonetheless accused him of "some overstatement."

Defense counsel further argued that Pugliese "is certainly, certainly not disabled" and "is [not] likely [to be] disabled as a result of this injury." After characterizing Pugliese's claim for a large award of future lost wages as "outrageous," Perdue's counsel again emphasized that Perdue did not dispute Pugliese's entitlement to at least some compensatory damages:

> He is entitled to some compensation. I am not saying don't give him anything. That just wouldn't be fair and just. And you have promised me that you would be fair and just. Fair and just, not only to Mr. Pugliese, but fair and just to Mr. Perdue and me.

The jury nevertheless returned a verdict awarding Pugliese nothing. Before the court excused the jury, Pugliese questioned the verdict, noting that the parties had stipulated to Dr. Vrablik's medical bills of $1,057. The

court instructed Pugliese to raise the objection later, by motion. Pugliese subsequently did move for a new trial, claiming that in his closing statements Perdue had admitted causing at least some damages and that, in light of this admission, the jury's verdict was unreasonable and unjust. The superior court denied this motion. Pugliese appeals.

III. *PERDUE'S COUNSEL DID NOT FORMALLY ADMIT CAUSATION OF DAMAGES, BUT A NEW TRIAL IS NECESSARY BECAUSE THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.*

A. *Perdue's Counsel Did Not Formally Admit Causation of Damages.*

■ Although Perdue conceded before trial that he was negligent, Pugliese still had the burden of proving his damages. "There are two aspects to damages. The first is causation, that is, the evidence must prove that the loss was caused by the tort. The second is amount. The party seeking damages must provide the jury with a 'reasonable basis' for computing the award."[1] Pugliese acknowledges this burden but argues that he met it because Perdue's stipulation as to Dr. Vrablik's medical bills and his counsel's statements in closing argument amounted to binding admissions of causation that required the jury to award at least some damages. Pugliese reasons that the jury must not have "properly weigh[ed] the evidence or underst[oo]d the law or the meaning and effect of [these] conclusively established facts."

■ Whether Perdue made binding admissions is a question of law that we review de novo, applying our independent judgment to adopt the rule of law most persuasive in light of precedent, reason, and policy.[2]

■ Pugliese first contends that Perdue admitted causation by stipulating to compensate him for Dr. Vrablik's medical bills. But the record does not support this contention. During the trial, both counsel stated that they had stipulated to the total amount of Dr. Vrablik's billings, but neither said anything suggesting an agreement that these bills were actually compensable. In keeping with the statements of counsel, the trial court informed the jury that "the parties stipulate and you may then accept that Dr. Vrablik's bills [were] for $1,057." During his closing argument to the jury, Perdue's counsel said nothing that could reasonably be construed to expand the original scope of the stipulation. Accordingly, the record establishes that the stipulation dealt only with the amount of the billings and simply did not address compensability.[3]

Pugliese separately contends that various statements made by Perdue's counsel during closing argument amounted to judicial admissions as to causation of damages. But a careful review of counsel's argument belies Pugliese's claim.

■ In *Hayes v. Xerox Corporation,*[4] we held that "[a] judicial admission, to be binding, must be one of fact and not a conclusion of law or an expression of opinion."[5] The admission must consist of "clear, deliberate, and unequivocal statements of fact."[6] By arguing that "we think" Pugliese's damages were "minimal" and by accusing him of "embellishing" and of engaging in "some overstatement," defense counsel impliedly conceded that Pugliese's claims were to some minimal extent valid and deserved to be compensated. Counsel later expressly conceded the point by telling the jury that Pugliese was "entitled to some compensation" and that it "just wouldn't be fair and just" to award him nothing. But these frank conces-

1. *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 154 (Alaska 1992).

2. *See Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

3. Based on two mentions by Perdue's counsel of Pugliese's claim for $540 in past lost wages, Pugliese also argues that the parties stipulated to Pugliese's entitlement to compensation for that amount. But the record does not disclose any stipulation as to the $540 lost wage claim. Perdue's counsel simply mentioned that Pugliese claimed only $540 in past lost wages. The statements accurately described Pugliese's claim.

4. 718 P.2d 929 (Alaska 1986).

5. *Id.* at 931.

6. *Id.* at 933.

sions do not qualify as binding judicial admissions under the *Hayes* test: they are all framed as counsel's personal opinions or as proposed legal conclusions. They are substantially similar to the statements we considered in *Hayes*.[7] For this reason, we hold that counsel's statements were not binding admissions because they were "not the clear, deliberate and unequivocal statements of fact necessary for a judicial admission."[8]

Because the verdict did not conflict with any binding admissions as to causation, it follows that the trial court did not err in denying a new trial on that basis.[9]

### B. A New Trial Is Necessary because the Verdict Is against the Weight of the Evidence.

Pugliese argues in the alternative that the superior court should have granted a new trial because the "evidence supporting the verdict was completely lacking or so slight and unconvincing" that the verdict was plainly unreasonable and unjust.

▇▇▇▇▇ Alaska Civil Rule 59(a) allows the court to grant a new trial "if required in the interest of justice." The decision to grant or deny a new trial is within the trial court's discretion.[10] We will affirm a trial court's decision to deny a new trial if there is an evidentiary basis for the jury's decision.[11] We will reverse a decision denying a new trial "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[12] In reviewing an order denying a new trial, we must view the evidence in the light most favorable to the non-moving party.[13]

▇▇▇ Pugliese claims that the evidence fails to support the verdict because Dr. Vrablik's testimony went unrebutted; Perdue produced no contrary evidence as to the existence of a compensable injury. Perdue responds that the evidence supports the verdict because the jury simply could have concluded that Pugliese's pre-existing injuries caused his damages. But Pugliese's argument is persuasive.

The undisputed facts establish that Perdue negligently drove his pickup truck into Pugliese, a collision involving direct bodily impact. Within two days, Pugliese reported the incident to Perdue's insurance adjustor. When Pugliese later complained about his back injury to Dr. Vrablik, the doctor's examination confirmed the presence of physical symptoms consistent with Pugliese's report. Subsequent EMG testing confirmed the presence of irritation at the L–5 nerve root. And further objective tests—X-rays and an MRI—ruled out other potential causes.

Based on these findings, Dr. Vrablik diagnosed Pugliese as suffering from irritation of the L–5 nerve root. Because Pugliese had shown no sign of the injury during prior visits and the injury itself was consistent with the reported collision, the doctor concluded that the collision was the most likely cause of Pugliese's back problems. While Dr. Vrablik readily acknowledged that Pugliese suffered from pre-existing conditions that might predispose him to experience the kind of back and leg pain that he had reported, the doctor unequivocally testified that none of these pre-existing conditions would ordinarily have caused Pugliese's back and

---

7. *See id.* at 932 (holding that defense counsel's estimate that compensable damages were $69,000–$70,000 and concession that "I think he's been significantly injured. I think he has injury now. I think it may need treatment. We don't know for sure." were not judicial admissions) (internal quotations omitted).

8. *Id.* at 933. *See also Tunender v. Minnaert*, 563 N.W.2d 849, 853 (S.D.1997) ("An admission is limited to matters of fact which would otherwise require evidentiary proof, and cannot be based upon personal opinion or legal theory.") (internal quotations omitted).

9. Our conclusion that Perdue made no binding judicial admissions makes it unnecessary to con-

sider Pugliese's subsidiary claim that the trial court committed plain error by failing to instruct the jury in conformity with the judicially admitted facts.

10. *See Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989).

11. *See id.; Richey v. Oen*, 824 P.2d 1371, 1375 (Alaska 1992); *Hayes*, 718 P.2d at 933.

12. *Richey*, 824 P.2d at 1375.

13. *See id.*

leg pain unless triggered by some kind of traumatic event.

Perdue nevertheless observes that Dr. Vrablik necessarily relied on Pugliese's report in attributing his injury to the collision; Perdue further observes that Pugliese's credibility was challenged in numerous respects. On this basis, Perdue reasons that the jury might have rejected Dr. Vrablik's opinion as to causation and might instead have concluded that Pugliese injured himself at work, where he was regularly required to do heavy lifting.

But this reasoning misinterprets Dr. Vrablik's testimony. While the doctor unquestionably relied heavily on Pugliese's report in concluding that the collision had caused Pugliese's injury, his testimony indicates that he relied on objective medical evidence—his own physical examination (which included significant objective observations) and the results of EMG testing—to form his underlying opinion that Pugliese had recently begun to experience pain from irritation to his right L–5 nerve root. Perdue did not rebut, or even seriously challenge, the medical basis for this underlying conclusion. Neither did he refute or challenge Dr. Vrablik's unequivocal testimony that Pugliese's L–5 irritation required some form of precipitating trauma.

Pugliese thus made a compelling, essentially unrebutted showing that when he visited Dr. Vrablik in May 1994, he had recently experienced some form of traumatic injury to his back. And because Perdue offered no evidence at all tending to show that Pugliese had experienced any recent trauma other than the April 1994 collision, a verdict finding that Pugliese's injuries resulted from some other traumatic cause would have required sheer speculation.

Indeed Perdue never requested the jury to reach such a verdict. To the contrary, by arguing that Pugliese's claims were "embellished" and "overstated" and by expressly acknowledging that Pugliese was "entitled to some compensation," Perdue effectively conceded the existence of a compensable, collision-related injury. Although we have held that this concession did not meet the legal test for a binding admission of liability, it nonetheless reflects defense counsel's perception of the case at the close of the trial. To this limited extent the concession can help us set realistic limits on inferences that the jury could reasonably draw from the evidence. Perdue's concession thus reinforces the conclusion that the evidence supporting an award of no damages at all "was so ... slight and unconvincing as to make the verdict plainly unreasonable and unjust." [14]

*Richey v. Oen* [15] also reinforces this conclusion. Oen's car bumped into the rear of a car driven by Richey, causing almost no visible damage.[16] Richey sued Oen, claiming that the accident had seriously injured her back, requiring surgery.[17] The gist of Oen's defense was that Richey's injuries were preexisting.[18] The trial court granted Richey's motion for a directed verdict on Oen's negligence but sent the causation question to the jury.[19] After the jury returned a verdict finding that Richey suffered no injuries from the accident and awarding no damages, Richey unsuccessfully moved for a new trial and for a judgment n.o.v.[20]

We affirmed the trial court's order denying a new trial,[21] concluding "that the evidence supporting the jury's conclusion is [not] so slight or unconvincing as to render the verdict either unfair or unreasonable." [22] But in reaching this conclusion, we pointed to "a plethora of conflicting testimony concerning the nature and extent of Richey's lower back injury." [23] Specifically, we described a conflict concerning whether Richey had immediately complained about back pain, testimony

14. *Id.* (quoting *Hayes,* 718 P.2d at 933).

15. 824 P.2d 1371, 1375 (Alaska 1992).

16. *See id.* at 1372, 1373.

17. *See id.* at 1372–73.

18. *See id.* at 1373.

19. *See id.*

20. *See id.*

21. *See id.* at 1376.

22. *Id.*

23. *Id.* at 1375.

from four experts acknowledging that Richey suffered from a degenerative back problem caused by several prior accidents, evidence establishing that Richey had been treated for lower back pain a short time before the accident, Richey's apparently deliberate denial of her extensive preexisting injuries, Richey's inability to identify any damage or repair to her vehicle caused by the accident, and a physician's testimony expressly concluding that the accident had not caused any of Richey's injuries.[24] Yet despite all of this evidence, we expressed the view that Richey's right to recover at least some compensable damages presented a close question.[25]

In contrast to the extensive evidence pointing to a pre-existing cause of injury in *Richey*, the evidence negating the existence of compensable damages here is slight and speculative. First, Pugliese's collision involved direct bodily impact. Second, while Perdue denied any immediate complaint of injury, he tempered this denial with an admission that Pugliese had "said something" about going to call the police; undisputed evidence established that Pugliese had reported the incident to Perdue's adjustor no later than two days after it occurred. Third, while the evidence leaves ample room to doubt the scope and seriousness of Pugliese's injuries, there is virtually no evidence refuting Dr. Vrablik's conclusion that Pugliese had recently sustained a traumatic and painful injury to his lower back. No solid evidence supports Perdue's conjecture that Pugliese sustained this injury at work, rather than as a result of the collision. Finally, as we have already noted, Perdue repeatedly acknowledged the existence of at least some accident-related injury.

## IV. CONCLUSION .

Our review of the trial record convinces us that evidence supporting a complete denial of damages is so slight and unconvincing as to make the jury's verdict unreasonable and unjust. Because we conclude that the denial of a new trial was an abuse of discretion, we REVERSE and REMAND for a new trial.

CARPENETI, Justice, not participating.

---

24. *See id.* at 1375–76.

25. *See id.* at 1375.