Donald W. HOGG, Appellant,

v.

RAVEN CONTRACTORS, INC., an Alaska Corporation, and Kenai Peninsula Borough, Appellees.

No. S–11874.

Supreme Court of Alaska.

May 5, 2006.

A. Lee Petersen, Petersen Professional Corp., Willow, for Appellant.

Patrick J. McKay, Law Offices of Patrick J. McKay, Anchorage, for Appellees.

Before: BRYNER, Chief Justice,
MATTHEWS, EASTAUGH, FABE, and
CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

This appeal arises from the superior court's denial of a motion for a new trial. The verdict at issue arose from a negligence action that Donald Hogg brought against Raven Contractors and Kenai Peninsula Borough after Hogg fell into a trash container at the Kenai Transfer Facility. Although the jury found that Raven, the operator of the facility, had been negligent, it determined that Raven's negligence was not a legal cause of Hogg's injury. Hogg's subsequent motion for a new trial was denied, and he claims on appeal that the trial court did not apply the correct standard when reviewing the jury's verdict. But the trial court's decision was consistent with an application of the correct legal standard. Furthermore, we apply a significantly more deferential standard of review to a superior court's denial of a new trial than the superior court applies to a jury verdict, and the superior court's decision complies with our standard. For these reasons, we affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Background

The Kenai Transfer Facility contains large metal docks into which members of the public can unload trash. The inner walls of each dock form a chute, sloping downward towards an opening, under which sits a container to collect the trash. On the outside opening, where visitors unload trash, the dock is blocked by a two-foot-high concrete barrier, with a thin ledge on top. There is a horizontal metal pipe above the barrier, with both ends bent at right angles and inserted into sockets on the ledge. A photo of the dock taken September 19, 2002 shows a sign in plain view warning members of the public not to stand on the ledge, and Hogg concedes

that such a sign had been posted at the time of his visit.

On September 1, 2002, Hogg was unloading trash from his pickup at one of the docks. Hogg claims that he backed his truck up to the ledge, "got into the box of his pickup and unloaded [the trash] and then stepped onto the ledge and put his hand on the bar." He alleges that the bar "swung away" when he put his weight on it because one end was not in the socket, causing him to lose his balance and fall into the trash chute. Raven and Kenai, however, assert that Hogg pulled his truck so far toward the dock that when he stepped out of the bed of the truck, he was actually stepping over the ledge and into the chute. They also claim that neither Hogg nor the single Raven employee to witness the incident saw the pipe loose before the incident. Neither appellee disputes that the fall rendered Hogg unconscious and caused injuries that required hospitalization.[1]

### B. Evidence Presented at Trial

The only witness to the accident other than Hogg himself was Matt Neal, a Raven employee who was standing on a nearby catwalk at the time of the accident. Neal gave an account of the accident in a report written for his employer on September 2:

> Mr. Hogg had just finished emptying his garbage at the site. As he climbed from the back of his truck, he stepped on the bay ledge, using the rail for support. The problem occur[r]ed because the last person disposing in that area had unhooked the rail; instead of rehooking it[,] however, they swung it back so that it appeared closed. Consequently, Mr. Hogg fell into the trailer. I was on the catwalk when the accident occur[r]ed. When he hit the bottom he seemed unconscious, so I immediately called 911. When I returned he had regained consciousness and was lucid and alert, but could not stand. Paramedics arrived minutes later and removed him from the trailer doors.

Neal testified at trial that he had not seen the pipe taken out of the socket that day,

1. But Raven and Kenai do dispute the extent of the injuries attributable to the accident, alleging

that some of the ailments for which Hogg received treatment were "pre-existing problems."

either by Hogg or by other members of the public, and that he had assumed that it was loose when writing his accident report. Although he did not "recall specifically," he claimed that he thought Hogg climbed into the bed of the truck by "stepp[ing] in on the bumper and into his truck."

Hogg's account at trial differed slightly from Neal's in that he claimed to have taken a more circuitous route out of the pickup truck bed:

> I backed up to the stall. . . . Backed right up against the facility with my bumper against it. I got out of my pickup, went under the rail in the next bay, went around the pillar, let my tailgate down, went in my pickup, emptied the trash. Got out of the pickup, walked over to where the pole is, bent down, reached down, and with my left hand raised the tailgate.
>
> As I started to stand up, I reached up and caught the rail with my left hand. The rail came loose. The only thing I remember after that point was [that] I heard a bang, and the next thing the medics were taking me out of the dumpster.

But Hogg admitted that his recollection of how he got out of the truck might be inaccurate, noting that the accident resulted in a serious head injury. On cross-examination, Hogg conceded that the tailgate of his truck covered the entire ledge, and that he actually stepped beyond the ledge "underneath the pole there" (which seems to be a reference to the rail) and onto the slope surface where he squatted to raise the tailgate of his truck before falling.

The court also took testimony about the design of the facility, with Hogg's expert arguing that it should have been designed with guardrails in front of the trash docks, and an engineer employed by Kenai claiming that a design with guardrails would have been ineffective because different-sized guardrails would be required for different sizes of trash and unloading vehicles. The Kenai engineer, who was "involved . . . as a project manager throughout design and construction," pointed out that the facility met the Uniform Building Code standards for a docking facility in effect at the time of construction, and that these standards did not require a guardrail at all. He also maintained that warning signs "were installed prior to [the facility's] opening and upon completion of construction."

## C. Jury Instructions and Verdict

Before the case was submitted for deliberation, the court instructed the jury that, in order to find that Hogg was entitled to recover, the jury had to determine (1) that the defendants were negligent; (2) that the defendants' negligence "was a legal cause of the plaintiff's harm"; and (3) that Hogg was actually harmed. The court defined "negligence" as "the failure to use . . . that amount of care that a reasonably prudent person would use under similar circumstances." It also instructed the jury about the meaning of "legal cause":

> A legal cause of harm is an act or a failure to act which is a substantial factor in bringing about the harm. An act or failure to act is a substantial factor in bringing about harm if it is more likely true than not true that:
>
> 1. the act or failure to act was so important in bringing about the harm that a reasonable person would regard it as a cause and attach responsibility to it; and
>
> 2. the harm would not have occurred but for the act or failure to act.

After deliberating, the jury issued a special verdict finding that Raven had been negligent, but that its negligence had not been a legal cause of Hogg's injury. It found that Kenai had not been negligent.

## D. Hogg's Motion for a New Trial

Hogg subsequently moved for a new trial, claiming that the jury's verdict was inconsistent with the court's instructions on negligence and causation. His motion pointed out that "the judge is free to weigh the evidence for himself . . . and may set aside a verdict even though there is substantial evidence to support it," and noted that "[t]he judge is not required to view the evidence most favorably to the verdict winner." The motion also noted that the appellate court "view[s] the evidence in the light most favorable to the

non-moving party"[2] when reviewing a trial court's denial of a new trial. In support of the jury's verdict, Raven argued, among other things, that the evidence presented at trial could have permitted the jury to find Raven negligent in ways that did not cause the accident. For example, Raven argued that "the jury could have found that Raven should have moved some of the warning signs to more obvious places" but that this would have made no difference since Mr. Hogg did not pay any attention to the signs. The trial court denied Hogg's motion.

## III. DISCUSSION

### A. Standard of Review

■ When determining whether to grant a motion for a new trial,

a trial court may set aside a verdict and order a new trial in the interest of justice if the verdict is against the weight of the evidence. In deciding a motion for a new trial on this basis, the court must use its discretion and independently weigh the evidence. A court may set aside a verdict as being against the weight of the evidence even when "there is substantial evidence to support it." The decision is a matter for the trial court's discretion.[3]

None of our cases requires the trial court to view the evidence in the light most favorable to the non-moving party.

■ We apply a different standard when reviewing a trial court's decision to deny a new trial after a jury verdict. Although the question "[w]hether the trial court applied the correct legal standard is a question of law that we review de novo,"[4] our review of the trial court's decision itself is considerably more deferential. Because "[t]he question . . . whether to grant or re-

fuse a new trial rests in the sound discretion of the trial court . . . we view the evidence in the light most favorable to the non-moving party."[5] We "will affirm a trial court's decision to deny a new trial if there is an evidentiary basis for the jury's decision,"[6] and "will only reverse a decision to deny a new trial 'if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust.'"[7]

### B. The Trial Court Did Not Err in Denying the Motion for a New Trial.

■ Hogg argues that the jury's findings that Raven was negligent but that Raven's negligence was not the legal cause of Hogg's fall requires one of the following assumptions: (1) that the loose metal pipe was not a cause of Hogg's fall; (2) that the fall was not a legal cause of the damages suffered by Hogg; or (3) that Raven's negligence was not the legal cause of the metal pipe's being loose. But at oral argument of this appeal, Hogg's counsel pointed out that he had argued a number of negligence theories to the jury, including inadequate warning signage regarding the pipe and the danger of stepping on the ledge, the alleged failure of the nearby Raven employee to give a verbal warning to Hogg, and the alleged failure of the employee to secure the pipe.

The jury's verdict, then, need not have been based on one of the three assumptions listed by Hogg. Rather, the jury could have found Raven to be negligent on one of the other theories argued by Hogg and excluded this negligence as a potential cause of the accident. For example, some signs warning the public not to climb onto the ledge were posted at the facility before Hogg's fall. The jury could have determined that although the

---

2. Hogg quoted our opinion in *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999).

3. *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1176 (Alaska 2002) (footnotes omitted) (quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2806, at 65 (2d ed.1995)); *see also Pugliese*, 988 P.2d at 581 ("The decision to grant or deny a new trial is within the trial court's discretion.").

4. *Kava*, 48 P.3d at 1173.

5. *Id; see also Richey v. Oen*, 824 P.2d 1371, 1375 (Alaska 1992) (noting that we are required to view the evidence in the light most favorable to the non-moving party).

6. *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001).

7. *Grant v. Stoyer*, 10 P.3d 594, 596 (Alaska 2000) (quoting *Pugliese*, 988 P.2d at 581).

signs should have been bolder or placed in a different location, Hogg saw them and stepped onto the ledge anyway, as he had done before. Further, one of Raven's main theories as to how the accident happened was that the pipe was in both of its sockets prior to the accident but was dislodged by Hogg's action when he ducked under it or when he grabbed for it while he was crouching on the downward sloping surface beyond the pipe. Thus, the first assumption on which Hogg's argument is based—that the pipe was loose prior to Hogg's arrival on the scene—may not have been accepted by the jury.

Hogg argues that this court's decision in *Grant v. Stoyer* requires a reversal of the trial court's order because "where negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial and uncontroverted, some damages must ordinarily be awarded."[8] In *Grant*, we reversed a trial court's decision to deny a new trial where a jury determined that the defendant in a car accident had been negligent, but that the accident was not the legal cause of the defendant's injuries.[9] But in *Grant*, the defendant conceded negligence, and the evidence clearly established that the defendant's negligent conduct had caused the accident.[10] We reversed the trial court's decision "[b]ecause it [was] beyond dispute that Stoyer negligently caused substantial physical injury to Grant."[11] In the present case, the evidence convinced the jury that Raven was negligent, and clearly establishes that Hogg suffered serious physical injuries, but it does not necessarily establish that Raven's negligence was the cause of Hogg's injuries. Thus, the trial court's decision to deny a new trial is consistent with an independent review of the evidence and does not violate the rule announced by this court in *Grant*.

Our own standard of review is significantly more deferential than the standard that the trial court should apply to a motion for a new trial. In this case, we do not believe that the evidence supporting the verdict was "completely lacking or slight and unconvincing."[12] Moreover, the decision whether to grant a new trial was within the discretion of the trial court. Unlike this court, for which testimony is necessarily but words on a page, the trial court had the opportunity to hear the witnesses testify in person. Similarly, the trial court could weigh the evidence in the context of its credibility determinations about witnesses. Our deferential standard of review[13] takes this into account. For this reason, we hold that there was an "evidentiary basis for the jury's decision."[14]

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the trial court.

8. 10 P.3d at 598; *see also Pugliese*, 988 P.2d at 583 (remanding for a new trial where the jury declined to award damages to a plaintiff who had been negligently hit by a pickup truck).

9. 10 P.3d at 596–99.

10. *Id.* at 595–96.

11. *Id.* at 599; *see also id.* (noting that "Stoyer's own experts agreed that Stoyer had injured Grant" and that "[t]he trial evidence establishes without doubt that Stoyer's negligence caused a serious and violent accident that injured Grant"); *Pugliese*, 988 P.2d at 581 (remanding for a new trial because "[t]he undisputed facts establish that Perdue negligently drove his pickup truck into Pugliese, a collision involving direct bodily impact").

12. *Grant*, 10 P.3d at 596 (quoting *Pugliese*, 988 P.2d at 581).

13. *See Kava*, 48 P.3d at 1173.

14. *Glamann*, 29 P.3d at 259.