**Lloyd KINGERY, Appellant,**

v.

**Roscoe BARRETT, Appellee.**

No. S–13246.

Supreme Court of Alaska.

March 4, 2011.

Richard L. Harren, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellant.

Barry J. Kell, Call, Hanson & Kell, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Roscoe Barrett's vehicle collided with Lloyd Kingery's vehicle near Palmer. Shortly thereafter, another vehicle collided with Kingery's vehicle. Kingery sued Barrett and the other driver to recover money damages for his injuries. Barrett admitted that he drove negligently but argued that his negligence was not the cause of Kingery's injuries. Kingery settled with the other driver; his suit against Barrett went to trial. The jury returned a defense verdict, finding that Barrett was not the cause of any injuries to Kingery. The superior court denied Kingery's motion for a new trial, and Kingery appeals. Because the superior acted within its broad discretion in denying the motion for a new trial, we affirm.

## II. FACTS AND PROCEEDINGS

In 2001 Lloyd Kingery worked the night shift for a road construction company removing rock from Hatcher's Pass. On the morning of October 12, 2001, he was driving home from work on the Old Glenn Highway near Palmer when he was involved in a traffic accident with Roscoe Barrett. Barrett had been driving on Maud Road. As he approached the intersection with the Old Glenn Highway, he was unable to stop due to icy road conditions and collided with Kingery.

After the impact (the first collision) Barrett moved his vehicle to the side of the road and walked over to talk to Kingery. Sometime between one and five minutes later, as the two men were talking and exchanging information near Kingery's pickup truck, a third vehicle operated by Jeremy Miller approached. Barrett warned Kingery, who could not see from where he was standing that a vehicle was approaching. Kingery jumped back through the open passenger door of his truck just before the oncoming car struck Kingery's truck (the second collision).

The second collision spun Kingery's truck into the ditch on the side of the road. Kingery's truck was towed from the scene a few hours later, and Kingery got a ride home. Kingery slept during the day on October 12 and went to work that night as usual. His employer informed him that night that the road construction job he had been working was ending for the winter, as is customary in Alaska. Kingery's layoff had nothing to do with the collisions earlier in the day.

Kingery went to a chiropractor, Dr. Bobby Lucas, several times shortly after the collisions complaining of neck and back pain. Dr. Lucas had treated Kingery for neck, shoulder, and back pain in the two years prior to the collisions as well. Kingery did not work again until the following summer.

During the summer of 2002, while operating a bulldozer at a construction site, Kingery injured his back again. Kingery continued to visit Dr. Lucas in 2002. He also visited Dr. David Werner, a physician, for treatment following the 2002 injury, complaining of back pain. Dr. Werner referred Kingery to Marian Lear, a physical therapist, for treatment as well.

In October 2003 Kingery and his wife filed a complaint in the superior court alleging that Barrett and Miller were negligent in the 2001 collisions. Miller and Barrett answered the complaint. Miller denied the allegations of negligence, causation, and damages and offered several affirmative defenses. Barrett admitted that he drove negligently, but denied that his negligence was "the real and/or proximate cause of the damages" the Kingerys claimed. Barrett also raised several affirmative defenses, including comparative negligence.

The Kingerys settled with Miller before the case went to trial. On the first day of trial, September 4, 2007, Kingery's wife dismissed her claims against Barrett, leaving Kingery as the sole plaintiff and Barrett as the sole defendant.

At trial Kingery testified to the circumstances of both collisions and how he felt afterwards. At trial he agreed that he did not "feel like [he]'d been injured" following the first collision, but that following the second collision he could not feel anything: "All I felt was just needles and pins when I did get hit, all the way through my back bone." He nonetheless testified that he felt "good" later that day and that he "was getting sore but it wasn't bothering [him]." According to Kingery, he "just kept getting sorer and sorer and sorer" over the four or five days following the collisions.

Dr. Lucas testified that he treated Kingery for neck, shoulder, and back pain several times following the 2001 collisions, although Kingery did not mention the collisions until his second visit. Dr. Lucas testified that he x-rayed Kingery's back and discovered moderate to severe degenerative disc disease ten days after the collisions, but that the disease would have developed over a period of time and would not have been caused by the colli-

sions. Dr. Lucas also testified that he could not say whether the pain Kingery experienced following the 2002 bulldozer injury was caused by the collisions.

Dr. Werner agreed that he did not "feel comfortable expressing an opinion about whether or not Mr. Kingery's symptoms ... were the result of a car accident that happened in October of 2001." Physical therapist Lear agreed that she did not "have the ability to determine a cause" of Kingery's injuries.

The 2005 deposition testimony of independent medical examiner Dr. John M. Ballard was presented to the jury by video as well. After Kingery had filed suit in this case, Dr. Ballard reviewed Kingery's medical and chiropractic records, took a medical history from Kingery, and performed a physical examination on him. Dr. Ballard testified that he believed Kingery "had a cervical and a lumbar strain ... as a result of [the 2001 collisions]." He testified that the soft tissue injury Kingery suffered gave Kingery "a fair amount of need to ... see a chiropractor." He also testified that he could not determine which of the two collisions "was worse."

Prior to trial, both parties agreed that no reference should be made to the fact that Barrett was covered by insurance. At trial Kingery nonetheless sought to introduce portions of the claim file prepared by Allstate Insurance Company, Barrett's insurer, regarding the collisions. After suggesting he might introduce the Allstate claims records by calling Tracy Mears, an Allstate employee, as a witness, Kingery elected instead to file what he labeled an "Offer of Proof." The filing was not actually an offer of proof, as the superior court noted, but rather a "paragraph by paragraph argument as to why the court should admit [the claim file]." The court denied the request and excluded the claim file because it contained too much information about Barrett's insurance and would therefore be more prejudicial than probative.

At the conclusion of the trial both parties submitted proposed jury instructions. Neither party objected to the court's final jury instructions, which included a special verdict

form. The superior court read to the jury instruction no. 8—a definition of negligence—that erroneously asked the jury to determine whether Barrett had acted negligently, something he had admitted. The court immediately informed the jury that instruction no. 8 was incorrect, and that the jury members would receive a corrected copy the next morning at the beginning of deliberation. The printed instructions provided to the jury initially contained the erroneous instruction no. 8.[1] The special verdict form correctly indicated that Barrett was negligent; the first question the jury actually had to consider and answer was whether Barrett's admitted negligence was a legal cause of Kingery's harm.

The jury returned a verdict the next morning,[2] finding that Barrett's negligence was not a legal cause of any of Kingery's injuries. Kingery moved for a new trial in April 2008. The court denied that motion.

In May 2008 Kingery filed a motion seeking an examination of the superior court judge for bias or, alternatively, a change of judge. The superior court denied that motion as well, concluding that it was "without merit and without precedent" and noting that if Kingery made "a separate motion to disqualify under Title 22,[3] that motion may be referred to another judge according to the process set by statute." Kingery did not file a separate motion seeking review by another judge. The superior court entered judgment in Barrett's favor, awarding him $8,265.90 in attorney's fees and costs.

Kingery appeals the superior court's order denying his motion for a new trial.

## III. DISCUSSION

### A. Standard Of Review

■ "The question of whether to grant or refuse a new trial 'rests in the sound discretion of the trial court.' "[4] "We will 'affirm a trial court's decision to deny a new trial if there is an evidentiary basis for the jury's decision,' viewing the evidence in the light most favorable to the non-moving party."[5] "We will only reverse a decision to deny a new trial 'if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust.' "[6]

■ We apply our independent judgment to all questions of law, "adopting 'the rule of law most persuasive in light of precedent, reason, and policy.' "[7] Whether a party has made a binding judicial admission is a question of law that we review de novo, applying our independent judgment.[8]

■ "We review jury instructions de novo when a timely objection is made. Without a timely objection, we will only review instructions for plain error."[9] "Plain error will be found when an obvious mistake exists such that the jury instruction creates 'a high likelihood that the jury will follow an errone-

1. The original version of instruction no. 8 included the statement: "In this case, you must decide whether defendant used reasonable care under the circumstances, whether plaintiff used reasonable care under the circumstances, and whether Jeremy Miller used reasonable care under the circumstances." The corrected version provided: "In this case, you already have been instructed that defendant was negligent, but you must decide whether plaintiff used reasonable care after the first collision and whether Jeremy Miller used reasonable care under the circumstances."

2. Kingery argues that the jury potentially reached this conclusion prior to receiving the corrected version of instruction no. 8. Whether it did so is unclear from the record.

3. *See* footnote 44 (discussing AS 22.20.020(c), to which the court was referring).

4. *Kava v. Am. Honda Motor Co.,* 48 P.3d 1170, 1173 (Alaska 2002) (quoting *Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 442 (Alaska 1989)).

5. *Glamann v. Kirk,* 29 P.3d 255, 259 (Alaska 2001) (quoting *Pugliese v. Perdue,* 988 P.2d 577, 581 (Alaska 1999)).

6. *Grant v. Stoyer,* 10 P.3d 594, 596 (Alaska 2000) (quoting *Pugliese,* 988 P.2d at 581).

7. *Jacob v. State, Dep't of Health & Soc. Servs.,* 177 P.3d 1181, 1184 (Alaska 2008) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

8. *Pugliese,* 988 P.2d at 580.

9. *Cummins, Inc. v. Nelson,* 115 P.3d 536, 541 (Alaska 2005) (internal citations omitted).

ous theory resulting in a miscarriage of justice.' " [10]

■ The superior court's evidentiary rulings are reviewed for abuse of discretion.[11] "We leave questions of admissibility to the sound discretion of the trial court, reversing only if, upon review of the record as a whole, we are left with 'a·definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party.' " [12]

## B. The Superior Court Did Not Err In Denying Kingery's Motion For A New Trial.

Kingery advances a number of arguments in support of his contention that the superior court erred in denying his motion for a new trial. Kingery argues that he is entitled to a new trial because: (1) the jury verdict was inconsistent with Barrett's position during litigation and his admissions of negligence; (2) the jury was given an erroneous instruction; (3) Alaska law precludes a defense verdict in the present case; (4) the verdict was against the weight of the evidence; (5) the trial court impermissibly interjected during Kingery's examination of a witness; (6) the trial court erroneously excluded evidence Kingery wished to introduce; and (7) the trial court was biased against Kingery.

**10.** *Ollice v. Alyeska Pipeline Serv. Co.,* 659 P.2d 1182, 1185 (Alaska 1983).

**11.** *Bylers Alaska Wilderness Adventures, Inc. v. City of Kodiak,* 197 P.3d 199, 205 (Alaska 2008).

**12.** *Id.* (quoting *Dobos v. Ingersoll,* 9 P.3d 1020, 1023 (Alaska 2000)).

**13.** *Winschel v. Brown,* 171 P.3d 142 (Alaska 2007).

**14.** The test requires the plaintiff to demonstrate two elements: "that the accident would not have happened 'but for' the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it." *Id.* at 148. The legal cause instruction given to the jury included both elements.

**15.** *Blood v. Kenneth A. Murray Ins., Inc.,* 151 P.3d 428, 431 n. 17 (Alaska 2006) (A party waives an argument if the party does "not raise the point in the superior court ... by requesting

### 1. Alaska law does not preclude a defense verdict in this case, and Kingery is therefore not entitled to a new trial on this ground.

■■ Kingery argues that Barrett was the cause of at least some of Kingery's injuries as a matter of law. Kingery, citing *Winschel v. Brown,*[13] argues that Alaska's "substantial factor test"[14] of causation requires an award of damages in the present case. Because " 'but for' Barrett's original negligence ... there would have been no risk of a vehicle such as Miller's coming along and colliding with ... Kingery's vehicle," and because "this was a foreseeable harm brought about by Barrett," Kingery asserts that "[u]pon retrial Barrett should, as a matter of law, be held legally responsible for any and all of Kingery's damages related to both collisions." Barrett argues that Kingery did not preserve this argument below and that, in any event, *Winschel* is not on point.

■ Kingery did not argue at trial that Barrett caused Kingery's injuries as a matter of law. He did not move for a directed verdict on causation, propose jury instructions explaining that Barrett was the cause of Kingery's injuries as a matter of law, or otherwise argue that Barrett caused Kingery's injuries as a matter of law. Kingery has therefore waived the argument.[15]

a jury instruction or moving for a directed verdict." (citing *Willoya v. State, Dep't of Corr.,* 53 P.3d 1115, 1120 (Alaska 2002))); *see also Mullins v. Oates,* 179 P.3d 930, 941 n. 31 (Alaska 2008) ("A party may not raise an issue for the first time on appeal." (quoting *Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 280 (Alaska 2001))).

We also note that Kingery never argued in the superior court, nor does he argue to us on appeal, that Barrett and Miller were concurrent tortfeasors, and as such, causes of a single, indivisible harm. 1 DAN B. DOBBS, THE LAW OF TORTS § 174, at 423 (2001) ("[W]hen the plaintiff suffers injuries that are similar in nature or consequences, so that they cannot be separated in any practical way and cannot be attributed separately to the separate tortfeasors, each tortfeasor is treated as a cause of the entire indivisible injury."). In his closing argument, for example, Kingery asked the jury to *apportion* Kingery's injuries between the two collisions. And Kingery himself testified that he felt injured only after the second collision. Because Kingery did not argue a theory of concurrent causation, and because, as we explain below, there was sufficient evidence

## 2. Kingery is not entitled to a new trial because Barrett made no binding admissions with which the jury verdict was inconsistent.

 Kingery argues that the jury verdict was inconsistent with Barrett's position throughout the course of the litigation, and that he is therefore entitled to a new trial. Kingery suggests that Barrett disputed only the extent to which he was liable, not whether he was liable, identifying statements in Barrett's trial brief and parts of Barrett's proposed jury instructions.[16] Barrett responds that although he admitted he drove negligently, he maintained throughout trial that his negligence was not the legal cause of any injuries Kingery may have suffered.

 "A judicial admission, to be binding, must be one of fact and not a conclusion of law or an expression of opinion."[17] "The admission must consist of 'clear, deliberate, and unequivocal statements of fact.'"[18] None of the statements identified by Kingery are binding judicial admissions. Kingery identifies Barrett's statements in his trial brief that: (1) he was not "the *sole* real and proximate cause of [Kingery's] injuries"; (2) the jury was required to "determine the *measure* of damages and which party is responsible for the damages"; and (3) not "*all* of the damages [Kingery] claims are related to the accident." (Emphasis in Appellant's brief.) None of these three statements are admissions, much less unequivocal statements of fact, as required for judicial admissions to be binding.[19]

 Kingery also identifies the first sentence of one of Barrett's proposed jury instructions, which read: "The defendant has admitted that he is legally responsible for some part of the plaintiff's injuries." But this sentence originally appeared in Kingery's proposed jury instructions, and seems to have been copied into Barrett's proposed instructions. Furthermore, it is framed as a legal conclusion. Finally, it is immediately followed by the following sentence: "You must decide how much money, *if any*, will fairly compensate the plaintiff." (Emphasis added.) The statement, when viewed in context, is not a "clear, deliberate, and unequivocal statement[ ] of fact," and is therefore not a binding judicial admission.[20]

None of the statements identified by Kingery are binding judicial admissions that conflict with the verdict,[21] and Kingery is not entitled to a new trial on these grounds.[22]

## 3. Kingery is not entitled to a new trial because the inclusion of the erroneous jury instruction was harmless error.

 Kingery argues that a mistake in jury instruction no. 8, which defined negligence, entitles him to a new trial. The superior court read an initial version of instruction no. 8 that charged the jury with determining whether Barrett had acted negligently. The printed instructions provided

to support the jury's determination that the first collision did not cause Kingery's injuries, it was not plain error for the superior court not to instruct the jury on concurrent causation, nor do we need to decide whether Miller and Barrett were concurrent tortfeasors.

16. Kingery also identifies statements made by Miller's attorney. Nothing Miller's attorney stated could be a binding judicial admission for Barrett.

17. *Hayes v. Xerox Corp.,* 718 P.2d 929, 931 (Alaska 1986).

18. *Pugliese v. Perdue,* 988 P.2d 577, 580 (Alaska 1999) (quoting *Hayes,* 718 P.2d at 933).

19. *See id.* at 580–81 (holding that defendant's concessions at closing argument that plaintiff was "entitled to some compensation" and that it

"just wouldn't be fair and just to award him nothing" were not binding judicial admissions that conflicted with a defense verdict because they were "framed as counsel's personal opinions or as proposed legal conclusions"); *see also Hayes,* 718 P.2d at 933.

20. *See id.* at 580; *Hayes,* 718 P.2d at 931.

21. We also note that this case was not one in which the defendant switched his theory of the case at trial and plaintiff was not given accommodation or an opportunity to adjust. Barrett maintained from the outset that he was not the legal cause of Kingery's injuries.

22. *See Pugliese,* 988 P.2d at 581 ("[B]ecause the verdict [in favor of defendant] did not conflict with any binding admissions as to causation, it follows that the trial court did not err in denying a new trial on that basis.").

to the jury initially contained the same error. Kingery argues that the jury had already reached a verdict before it received a corrected version of the instruction, and therefore that "the jury decided this case based upon [an] erroneous instruction." Barrett does not dispute the mistake, but he observes that after the court read the erroneous version of the instruction to the jury it immediately informed the jury that instruction no. 8 was incorrect and that the jury would receive a revised instruction the next morning. Barrett also argues that "[i]t is pure speculation to suggest that the court's misreading of one clause in one instruction at the end of nearly two weeks of trial caused the jury to improperly decide this case."

We note that the special verdict form correctly indicated that Barrett was negligent, and that the first question the jury had to answer was whether Barrett's admitted negligence was a legal cause of Kingery's harm. We also note that jury instruction no. 5 provided: "I hereby instruct you as a matter of law that Mr. Barrett was negligent...."

Kingery did not object to any of the jury instructions. "Without a timely objection, we will only review instructions for plain error."[23] "Plain error will be found when an obvious mistake exists such that the jury instruction creates 'a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.'"[24]

Even if the jury had not received the corrected version of instruction no. 8, it is highly unlikely that the mistake altered the result. As Barrett notes, jury instruction no. 5 clearly stated that "Barrett was negligent" "as a matter of law." Furthermore, because

the special verdict form did not submit the issue of Barrett's negligence to the jury,[25] and the first question the jury had to answer was question two—whether Barrett's negligence was a cause of Kingery's injuries—the jury was not required or able to consider the issue of negligence.

Any error with respect to instruction no. 8 was harmless (and therefore not plain error), and Kingery is not entitled to a new trial because of instruction no. 8.

### 4. The jury verdict was not against the evidence so as to entitle Kingery to a new trial.

 Kingery argues that the jury must have improperly disregarded the evidence in reaching its verdict. Kingery specifically cites the testimony of Dr. Ballard, Dr. Lucas, Dr. Werner, and physical therapist Lear. Barrett argues that the evidence was "more than adequate to support [the superior court's] denial of Kingery's Motion for [a] New Trial."

 Under Alaska Rule of Civil Procedure 59(a), a trial court may grant a new trial "if required in the interest of justice."[26] "A court may set aside a verdict as being against the weight of the evidence even when 'there is substantial evidence to support it.' The decision is a matter for the trial court's discretion."[27] But we apply a much more deferential standard "when reviewing a trial court's decision to deny a new trial after a jury verdict,"[28] reversing only "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust."[29]

23. *Cummins, Inc. v. Nelson*, 115 P.3d 536, 541 (Alaska 2005) (citing *Manes v. Coats*, 941 P.2d 120, 125 (Alaska 1997)).

24. *Ollice v. Alyeska Pipeline Serv. Co.*, 659 P.2d 1182, 1185 (Alaska 1983).

25. The negligence question was pre-answered "yes" when the special verdict form was provided to the jury.

26. Rule 59(a) provides in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an

action tried without a jury, if required in the interest of justice."

27. *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 352 (Alaska 2006) (quoting *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1176 (Alaska 2002)).

28. *Id.*

29. *Grant v. Stoyer*, 10 P.3d 594, 596 (Alaska 2000) (quoting *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999)).

Inadequacy of a jury verdict can be grounds for a new trial in cases where negligence and causation are conceded or proved, but no damages are awarded.[30] For example, in *Pugliese v. Perdue*, we reversed the superior court's denial of a motion for a new trial following a jury verdict for the defendant in a negligence action.[31] We held that "[t]he undisputed facts establish[ed]" that the defendant's negligence caused the plaintiff some degree of injury, and that "a verdict finding that [plaintiff's] injuries resulted from some other traumatic cause would have required sheer speculation."[32] Similarly, in *Grant v. Stoyer*, we granted a new trial to a plaintiff to whom a jury awarded no damages in a negligence action and held that "where negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial and uncontroverted, some damages ordinarily must be awarded."[33]

But if conflicting evidence about causation exists we will not reverse the superior court's denial of a motion for a new trial following a verdict for the defendant.[34] In *Hogg v. Raven Contractors, Inc.*, we affirmed the superior court's denial of a motion for a new trial in an action in which the jury determined that defendant had been negligent, but that its negligence was not the cause of plaintiff's injuries.[35] Distinguishing *Grant*, we held:

> In the present case, the evidence convinced the jury that [defendant] was negligent, and clearly establishes that [plaintiff] suffered serious physical injuries, but it does not necessarily establish that [defendant's] negligence was the cause of [plaintiff's] injuries. Thus, the trial court's decision to deny a new trial is consistent with an independent review of the evidence and does not violate the rule announced by this court in *Grant*.[36]

Like the defendant in *Hogg*, Barrett was negligent. And like the plaintiff in *Hogg*, the evidence establishes that Kingery was injured at some point. But again, as in *Hogg*, the evidence "does not necessarily establish" that Barrett's negligence was the cause of Kingery's injuries.

Kingery argues that "the overwhelming and undisputed medical evidence . . . proves that Mr. Kingery sustained substantial soft tissue injuries in this accident, at minimum a temporary aggravation of a preexisting condition . . . for which he is entitled to be compensated, as a matter of law." As noted above, however, Kingery waived his argument that Barrett caused his injuries as a matter of law.[37]

Given the conflicting evidence presented to the jury and the way the case was presented and argued, we conclude that the jury could permissibly determine that Barrett's negligence was not the cause of Kingery's injuries. The verdict was therefore not plainly unreasonable or unjust, and Kingery is not entitled to a new trial on these grounds.

**5. Kingery is not entitled to a new trial because the trial court's exclusion of evidence was within the court's discretion.**

Kingery argues that the superior court improperly excluded the Allstate claim

---

30. *See Glamann v. Kirk*, 29 P.3d 255, 263 (Alaska 2001).

31. *Pugliese*, 988 P.2d at 581–83.

32. *Id.* at 581–82.

33. *Grant*, 10 P.3d at 598.

34. *See Richey v. Oen*, 824 P.2d 1371, 1375–76 (Alaska 1992).

35. *Hogg v. Raven Contractors, Inc.*, 134 P.3d 349, 353 (Alaska 2006).

36. *Id.*

37. *See* Part III.B.1, *supra*. Moreover, although Dr. Ballard, who performed the independent medical examination, testified that he believed Kingery "had a cervical and a lumbar strain . . . as a result of [the 2001 collisions]," Dr. Ballard did not testify that the first collision, rather than the second, caused any harm to Kingery. And Kingery himself testified that he did not "feel like [he]'d been injured" following the first collision. When asked how he felt after the second collision, Kingery explained: "All I felt was just needles and pins when I did get hit, all the way through my back bone." Thus there is evidence to support a jury finding that all of Kingery's injuries were caused by the second collision, and not by the first collision with Barrett.

file information based on an "antiquated application" of Alaska Rule of Evidence 411.[38] Barrett argues that the materials were properly excluded, and that all evidence with particularly probative value in the claim file was admitted.

■ It appears that the superior court excluded the claim file under Alaska Rule of Evidence 403[39] rather than Rule 411; in excluding the evidence the court stated: "I just don't see anything here that overall isn't more prejudicial than probative to try to explain what happened." "When reviewing the exclusion of evidence under Evidence Rule 403 as unfairly prejudicial, we first 'consider the relevance of the [excluded evidence] and then determine whether . . . [the superior court's exclusion of it] constitute[s] a clear abuse of discretion.'"[40]

While some of the Allstate claim file may have been relevant under Evidence Rule 401,[41] its exclusion under Rule 403 was not an abuse of discretion. Kingery suggests that the claim file should have been admitted to show what Allstate employees told him, the date on which he first felt pain following the collisions, the amount of time between the collisions, and that Kingery provided the name of a potential witness to Allstate employees.

The date on which Kingery first felt pain and the amount of time between collisions were items of potentially considerable significance in the present case. But the court allowed the documents Kingery wished to introduce for those purposes a note reflecting the fact that his wife told a claim adjuster

that Kingery was very sore following the accident and a note reflecting Kingery's estimation on the day of the collisions that only one-and-a-half to two minutes passed between the collisions to be read to the jury. As far as a potential witness is concerned, the court observed that Kingery was free to interview and call that witness himself. Thus, Kingery was permitted to convey to the jury the relevant and probative information that was contained in the Allstate file; the trial court permissibly exercised its broad discretion in excluding the evidence it found to be more prejudicial than probative.

The superior court did not abuse its discretion in excluding the insurance file, and Kingery is not entitled to a new trial on these grounds.

**6. Kingery waived his arguments of superior court bias or improper interjection during his examination of a witness.**

■ Kingery's final two arguments are that the superior court impermissibly interjected itself during Kingery's examination of Dr. Werner and that the trial court was biased against Kingery. In support of the bias argument he cites the court's suggestion that the case was a "penny ante personal injury case[ ]" and the court's alleged impatience with his case. Kingery does not elaborate on these arguments or provide a single legal authority supporting either. He has therefore waived the arguments by inadequately briefing them.[42]

38. Alaska Rule of Evidence 411 provides:
 Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

39. Alaska Rule of Evidence 403 provides:
 Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

40. *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002) (quoting *Poulin v. Zartman*, 542 P.2d 251, 260 (Alaska 1975)) (some alteration in original).

41. Alaska Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

42. *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("'[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.'").

██ We note, however, that in our independent review of the trial record, we see no indication that the superior court was biased against Kingery[43] or that the court's interjection was improper. The court's suggestion that the case was a "penny ante" one was not made in front of the jury. In context, the superior court's comment was a lament that personal injury cases of relatively small value ("penny ante" cases) were harder to try because the cases could not be prepared as thoroughly as larger value cases where there was more at stake, yet it also seemed that the smaller personal injury cases were less likely to settle. The court began its comments with the statement that it was "really sympathetic with both" attorneys. There is no suggestion in any of the court's comments that it was biased against Kingery or his counsel. Kingery is not entitled to a new trial on either ground.[44]

## IV. CONCLUSION

Because the superior court acted within its broad discretion, we AFFIRM the superior court's denial of Kingery's motion for a new trial.

---

**43.** See Hanson v. Hanson, 36 P.3d 1181, 1184 (Alaska 2002) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women ... sometimes display." (quoting Liteky v. United States, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)) (emphasis and some alteration in original)).

**44.** Inasmuch as Kingery's bias arguments are an appeal of the superior court's denial of his motion for disqualification under AS 22.20.020, rather than grounds for a new trial, he has also failed to preserve them for appeal. Under AS 22.20.020(c), "[i]f a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts." But it was incumbent on Kingery, as the party seeking disqualification, to request that the chief justice assign the matter to a different judge after the superior court denied his motion. See Coffey v. State, 585 P.2d 514, 525 (Alaska 1978) ("[U]nder AS 22.20.020(c), it was incumbent on Coffey to request the chief justice, as presiding judge of the next higher court, to appoint another judge to determine the question."). The superior court invited Kingery to file another motion seeking review by another judge, but he never did so. He therefore failed to preserve the issue for appeal. See id. at 525–26.